NOONAN, Circuit Judge:
Ferrari North America (FNA) appeals the order of the Bankruptcy Appellate Panel (the BAP) approving the assumption of a dealership franchise by the trustee in bankruptcy (the Trustee) and the assignment and sale by the Trustee of the franchise to an entity called Symbolic Motor Car Company, Inc. (Symbolic). FNA’s appeal is moot if Symbolic is a purchaser in good faith. Holding that Symbolic is not, we reverse the order of assignment and sale, vacate the order approving assumption of the franchise, and remand.
FACTS AND PROCEEDINGS
R.B.B., Inc., dba Ferrari of Los Gatos, operated a dealership selling and servicing Ferraris in Los Gatos, California. R.B.B. was licensed by FNA under various agreements here collectively designated as the Franchise. On August 10, 1994, FNA sent R.B.B. formal notice of non-renewal of the Franchise on account of a variety of defaults by the dealership. A week later, on August 17, 1994, R.B.B. filed a petition in Chapter 11.
R.B.B. continued to operate the dealership as debtor in possession. One year later, in August 1995, on motion of the creditors’ committee, the bankruptcy court appointed Charles Sims as the Trustee. For over the next two years the Trustee unsuccessfully sought to sell the Franchise. In January 1998 the Trustee received an offer of $500,000 from an entity called Symbolic.
On January 29,1998, Symbolic was identified in a declaration by Marc Chase, its president, as West Coast Acquisitions, dba Symbolic Motor Car Company, Inc., headquartered in La Jolla, California. On the same date, the Trustee moved the court to permit the Trustee to assume the Franchise and to assign it to West Coast Acquisitions, dba Symbolic.
FNA objected that the Franchise was incapable of assumption, because there were twelve incurable nonmonetary defaults. On February 26, 1998 the bankruptcy court ruled on these objections. Under 11 U.S.C. § 365(b)(1), the court observed, a prerequisite to the trustee’s assumption of a contract was the cure of previous defaults. In re Claremont Acquisition Corp., Inc., 113 F.3d 1029 (9th Cir.1997), held that, when an automobile dealership had “gone dark” for seven consecutive days in violation of the franchise agreement, the defect was incurable. In the instant case, RBB had failed to pay California sales tax on vehicles it had sold, causing suspension of its license to sell from August 16, 1994 to September 1, 1994. But, the bankruptcy court found that FNA had “not shown any consequences of that default” (during the suspension, it may be that no sales occurred, but the dealership did remain open and the service department continued to “operate”). The court observed that FNA was justifiably concerned that this and other defaults could have injured FNA’s reputation, but held that FNA had not shown that damage had occurred. The court concluded that the defaults had been cured or were about to be cured. Assumption of the Franchise by the Trustee was approved.
The Trustee proceeded to advertise the sale to Symbolic and solicit other bidders *477 besides Symbolic. FNA objected to Symbolic and, at a hearing, challenged Symoblic’s identity and suitability. On February 25, 1998 the court conducted an auction. Symbolic, now offering $1,030,000, was the highest bidder. On March 24, 1998 the court conducted another hearing on FNA’s objections to Symbolic. On March 26, 1998 the court in a written opinion confirmed the sale and assignment to Symbolic.
The bankruptcy court began by identifying Symbolic as “a fictitious business name” under which two automobile dealerships did business. These companies, their business, financial resources, and owners were as follows:
West Coast Acquisitions (West Coast)
Location: La Jolla, California
Business: Buying and selling new and used Rolls Royces, Bentleys, Ferraris, Maseratis, Porches, Jaguars, and Aston Martins; holder of a franchise from Rolls Royce
Assets: (unaudited 1997 statement) $2,015,227
Liabilities: $1,793,132
Equity: $222,094
Net income: $107,094
Ownership: Marc Chase 99%
Trust for Chase’s daughter: 1%
North Beach Acquisitions (North Beach)
Location: La Jolla, California
Business: Buying and selling Ferraris, Maseratis, and Lamborghinis
Assets (audited 1997 statement): $23,524,000
Liabilities: $20,060,966
Equity: $ 3,463,000
Net income: $ 4,675,606
Among the liabilities, $1,229,206 at rates of 8.8% to 14%, $2,240,130 at the rate of 24%, all on unsecured demand notes.
Ownership: Marc Chase, managing member, 44%
Bernard Glieberman 30%
Bernie Chase 15%
Elliott Grossman 10%
Marc Chase’s daughter’s trust 1%
It is not clear from the bankruptcy court opinion which of these two separate corporations operating as “Symbolic” is the approved assignee.
The bankruptcy court went on to state: “If the Agreement is assigned to Symbolic, [Marc] Chase intends to operate the dealership under its current name ‘Ferrari of Los Gatos’ and has formed a limited liability corporation under that name (‘the LLC’) for that purpose; 99% of the LLC is owned by Chase and 1% is owned by his daughter’s trust, with Chase as the sole officer.” The court went on to note Chase’s substantial experience in selling Ferraris. The court noted that Chase intended to make an equity contribution of $750,000 to the new LLC and that he had a line of credit at the Huntington National Bank made available to him by Glieber-man.
The court analyzed FNA’s objections to the assignment. Bernie Chase, Marc’s brother, had been convicted in 1982 of selling cocaine and possessing an unregistered firearm. A corporation owned by Glieberman had pleaded guilty in 1979 to the misdemeanor of furnishing a gratuity to a federal employee. Grossman was convicted in 1993 of the misdemeanor of battery and fined $125. The court observed that FNA’s “complaints would have had more force if the misdeeds were not so remote in time and/or if they bore directly upon the operation of an automobile franchise.” The court gave no weight to FNA’s point that the criminal records had not been disclosed and became known only through FNA’s investigation. The court noted FNA’s objection that $3.5 million of North Beach’s financing depended on demand notes, but did not think it significant. The court attached no importance to the 24% rate of interest or to the fact that North Beach refused to identify the holders of the notes.
The court repeatedly referred to the assignment that it was approving as an assignment to Symbolic without indicating which of the two companies, West Coast and North Beach, doing business under the name Symbolic, was meant. The court, nonetheless, applied the factors known as the Van Ness criteria, Van Ness *478 Auto Plaza, 120 B.R. 545. 549 (Bkrtcy. N.D. Cal.1990). These criteria, so far as relevant, are:
1. Adequate working capital of the proposed dealer
2. Prior experience of the proposed dealer
3. Prior profitability of the proposed dealer
4. Prior sales performance of the proposed dealer
5. The business acumen of the proposed dealer
6. The sufficiency of the information about the qualifications of the proposed dealer provided to the manufacturer
Applying these criteria, the bankruptcy court first set out the relevant characteristics of North Beach as if it were somehow the Symbolic to which assignment was being made.
As far as “the ultimate purchaser,” the new LLC, was concerned, the court had before it Marc Chase’s statement that he would invest $750,000 in it and that Glie-berman would provide access to $1.5 million in a line of credit and that if more capital was needed, Chase or his daughter’s trust, or “one of his companies” would provide it. The court had no explanation of why Glieberman would provide the line of credit without consideration. There is no information in the record on how Symbolic — -whatever corporation it was — would transfer ownership of the franchise to Chase. The court concluded that Symbolic had met the Van Ness factors.
The court noted that John Mozart, a bidder, testified at the hearing that Bernie Chase had called him from London the day after the bidders had submitted their bids prior to the actual auction and asked Mozart to form a joint venture with him to acquire the Franchise. When Mozart declined, Chase told him that Chase would prevail and that Mozart’s participation would only drive the price up. Mozart, in fact, did not withdraw his bid. FNA on this appeal characterizes Bernie Chase’s conversation as an attempt at bid rigging. The bankruptcy court did not appear to be aware of this objection.
The court held that FNA unreasonably withheld consent to the assignment and approved the assignment and sale to Symbolic. FNA filed an appeal from the orders of assumption of the franchise and sale and sought a stay pending the appeal. The bankruptcy court denied the stay, as did the BAP. We denied FNA’s petition for a writ of mandamus requiring a stay. On May 24, 1998, the sale to Symbolic closed. FNA meanwhile appealed the orders of assumption of the franchise by the Trustee and the sale and assignment to the BAP. On March 26, 1999, the BAP dismissed this appeal as moot. FNA now appeals to us.
ANALYSIS
The Purchaser. 11 U.S.C. § 363(m) provides
The reversal or modification on appeal of an authorization under subsection(b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal unless such authorization and such sale or lease were stayed during appeal.
The sale was authorized by the bankruptcy court under § 363(b). The sale was not stayed. The question left under the statute is whether the assignee was a BFP.
The first requirement of having a purchaser in good faith is to have a purchaser. Who was the purchaser of the Franchise? The Trustee moved for authorization to assign and sell to West Coast doing business as Symbolic. The bankruptcy court’s authorization of the assignment and sale, however, is entitled “Memorandum Decision Authorizing Assignment Of Franchise *479 Agreement To Symbolic Motor Car Company” and moves on the first page to identify North Beach and West Coast as two different corporations using this fictitious business name. We cannot distinguish which corporation is being approved as purchaser and assignee. Sometimes the opinion reads as if West Coast were meant, sometimes as though North Beach was meant, sometimes as though both were meant, and occasionally as though only the new LLC was meant.
It is not clear why the ownerships of both West Coast and North Beach were examined by the court unless the court somehow regarded both corporations as the purchasers. In one paragraph, the bankruptcy court speaks of Symbolic’s $5,000,000 line of credit and of “West Coast’s own $3,000,000 line of credit.” Clearly at this point the bankruptcy court is distinguishing West Coast from Symbolic and is referring to North Beach when it speaks of Symbolic’s $5,000,000 line of credit. It is unclear why the court examined North Beach’s financing unless it believed that somehow North Beach was the buyer. It is unclear why the court, after examining North Beach’s financial condition, should in the next sentence declare, “Symbolic’s financial condition appears to be exceptionally strong”, unless the court had combined North Beach’s assets with West Coast’s assets, as though the companies’ use of the same fictitious business name “Symbolic” had effected the merger of the two.
West Coast’s condition, taken by itself, could not have been characterized as “exceptionally strong.” Its statement was unaudited, so the court had no secure basis for evaluating its condition. Equity, as reported by it, was under $250,000. North Beach had not pooled its assets with West Coast. In a sale, assignment and written opinion where Symbolic was said to be the purchaser it was necessary to say which Symbolic. The assets and lines of credit of North Beach and West Coast could not be mushed together. Ambiguity as to the purchaser was as fatal to the sale as the two ships named Peerless were fatal to the formation of a contract.
It may be argued that the confusion, while considerable, was not fatal. The bankruptcy court was aware that there was going to be an “ultimate purchaser.” But in that event the Van Ness criteria must be applied to the new LLC. That entity had zero experience, sales or profitability. The only way it could qualify was by treating it as the alter ego of Marc Chase. But in that event the court needed to know how Symbolic — whatever company this name . embraced — was going to fund the LLC and confer ownership on Chase. Whichever Symbolic was intended to be the purchaser, it had no connection, either corporately or as a guarantor, with the new LLC. Not inaptly, FNA characterizes what went on as a species of shell game. Under which shell was the winning bidder? Not Symbolic No. 1 containing West Coast. Not Symbolic No. 2 containing North Beach. But under a company to be formed, whose current assets were zero. The sale and assignment approved by the bankruptcy court were made on a shifting basis.
It could also be argued that the ambiguity of the bankruptcy court’s decision concealed a reality: that the assignment and sale were, in fact, to West Coast. So the sale had been advertised; so the sale was carried out; therefore, there could not have been doubt that West Coast was the assignee and purchaser that the court was approving. In a declaration filed December 1, 1998 by Marc Chase in this case, Chase identifies West Coast as the purchaser of the Franchise and declares that West Coast formed the “operating entity, Ferraris of Los Gatos LLC, to operate the sales and service facilities.”. But the Van Ness criteria were not applied by the court to West Coast alone, but to West Coast in combination with North Beach. It was “Symbolic,” treated as a fusion of the two companies, that emerged from the court’s *480 decision as the assignee and purchaser. This “Symbolic” was a mirage.
Bankruptcy is an intensely practical matter. The Trustee and the bankruptcy court were undoubtedly anxious to find a buyer and get cash to distribute to the creditors. Nonetheless, as two companies were ambiguously the purchaser, it cannot be concluded that an identified purchaser existed.
Reasonably Withheld Consent to Assignment. As Symbolic was not a good faith purchaser, § 363(m) does not protect the sale from attack. FNA consequently is free on this appeal to argue that its consent to the assignment was not unreasonably withheld.
For the same reasons we have held that the purchaser was not identified, we hold that FNA did not unreasonably withhold its consent. An automobile manufacturer with a special line of luxury motor cars and unhappy experience with an unreliable dealer, FNA was not unreasonable in objecting to dealing with the shifting financial structure presented under the fictitious business name Symbolic. The burden of proving that FNA was unreasonable in finding that Symbolic flunked the objective criteria of Van Ness was on Symbolic. In re Claremont, 186 B.R. 977, 985 (C.D.Cal.1995), aff'd. 113 F.3d 1029 (9th Cir.1997). Symbolic failed to carry its burden.
We need not decide at this point FNA’s other contention that the defaults of the debtor were either uncured or incurable. FNA has raised serious doubts on this score, but the bankruptcy court is in the best position to take a look at the situation as it now stands over two years since that court last addressed it. Moreover, the assumption of the Franchise by the Trustee was approved in connection with the proposed sale to Symbolic. The situation now is new.
Accordingly, the Order approving the sale and assignment is REVERSED; the Order approving assumption of the Franchise by the Trustee is VACATED; the case is REMANDED to the bankruptcy court for proceedings consistent with this opinion.