265 N.J. Super. 47 (1993)
625 A.2d 548
ROBERT HORN AND JOHN G. SENECA, PLAINTIFFS-RESPONDENTS,
v.
MAZDA MOTOR OF AMERICA, INC. AND W.D. GOETZE, INDIVIDUALLY, JOINTLY, SEVERALLY, OR IN THE ALTERNATIVE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1993.
Decided May 28, 1993.
*50 Before Judges HAVEY, STERN and BROCHIN.
Job Taylor, III, of the New York Bar, admitted pro hac vice, argued the cause for appellants (Young, Rose, Imbriaco & Burke, attorneys; Mr. Burke, Mr. Taylor, Louise Zeitzew and Lance Suede, on the brief).
Stephen Bernstein argued the cause for respondents (Bivona, Cohen, Kunzman, Coley, Yospin, Bernstein & DiFranceso, attorneys; Mr. Bernstein, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
Brunswick Chrysler-Plymouth, Inc. (d/b/a Brunswick Mazda) is an automobile dealership that sold both Chrysler and Mazda automobiles. On April 10, 1990, plaintiffs Robert Horn and John G. Seneca, who owned other automobile dealerships, entered into *51 an agreement with the owner of Brunswick Mazda, Daniel A. Brady, to buy its assets.
In order to be able to continue selling Mazda automobiles, plaintiffs needed Mazda's approval for the transfer of its franchise from Mr. Brady to themselves. Mazda was informed of the proposed transfer on April 20, 1990. It furnished plaintiffs with its standard form of application for approval of the transfer. They completed the form and submitted it to Mazda on or shortly after April 30, 1990. The form requested, and plaintiffs submitted, biographical information, personal financial statements, a pro forma balance sheet for the new dealership, an operating forecast, details about its proposed location, and information about the sources of the funds to be invested.
Among the questions contained on the application form were the following:
Are you now or have you been during the past seven (7) years ...:

A defendant in any law suit or legal processing [sic]?
Declared bankrupt or made an assignment for creditors?
Convicted of or imprisoned for crime?
Bonded for any reason? [Emphasis added.]
Plaintiffs answered "No" to each of these questions.
Between April 20 and August 7, 1990, while negotiating with Mr. Brady about various changes to their agreement, plaintiffs also talked to Mazda's representatives from time to time about the status of their pending application for Mazda's approval of the transfer of the franchise. They were told that the application was being processed, but that a floor plan agreement and a parts settlement accounts memo were needed and were still missing. A floor plan agreement is a lender's agreement to finance the dealership's purchase of its stock of automobiles. A parts account settlement letter is an undertaking specifying whether the old dealer or the new one will be responsible to Mazda for any amount which the dealership owed for its parts inventory at the time of the transfer.
*52 On August 7, 1990, Mazda received the parts account settlement letter and its representative called plaintiffs to tell them that their application was still incomplete because their floor plan agreement was still missing. On the afternoon of August 8, the Mazda representative responsible for granting or withholding approval of the transfer of the dealership to plaintiffs learned from Mazda's district sales manager that criminal charges were pending against Mr. Seneca for violating the narcotics laws. That same day, Mr. Seneca was asked about the matter. According to the trial court's findings, he replied truthfully, informing the Mazda representatives, in substance, that there were several criminal narcotics charges outstanding against him and that he was then on bail, but that the charges had been or were going to be dismissed.
Mazda's subsequent investigation disclosed that four indictments were outstanding against Mr. Seneca. They were a State grand jury indictment filed October 13, 1987, charging that on February 5, 1987, he possessed more than 8 ounces of cocaine containing at least 3.5 ounces of pure freebase, intending to distribute it, and that he possessed a .32 caliber automatic pistol without a permit; a Middlesex County indictment charging that on December 7, 1989, he possessed cocaine in an amount of less than half an ounce, intending to distribute it; and two Middlesex County indictments charging that he possessed small amounts of cocaine on November 1, 1988, and on July 18, 1989.
On August 10, 1990, Mazda's regional manager wrote Mr. Brady:
While your submission of a completed package of materials necessary to give Mazda sufficient notice to evaluate your proposal has been incomplete and our district manager has been working with you to complete your applications, a serious problem has recently come to our attention which requires us to inform you immediately that we cannot approve your buy/sell proposal at this time.
We have just learned that one of the proposed buyers did not disclose, in his application to Mazda, relevant information requested concerning his background and the pendency of criminal charges against him. This information was obviously called for in the materials submitted to Mazda and in our discussions with him and its exclusion as well as the pendency of the serious charges in question, require that we reject your proposal and you are hereby so notified.
*53 Pursuant to an amendment to the asset purchase agreement between plaintiffs and Mr. Brady, the sale of the dealership closed on August 10, 1990 without Mazda's approval. The amendment required the purchase price to be held in escrow until approvals were obtained from both Mazda and Chrysler. No express provision of the amendment prescribed what would happen if either of those approvals could not be obtained.
Plaintiffs Horn and Seneca responded to Mazda's refusal to approve their transfer of its franchise by filing a verified complaint[1] and order to show cause on August 20, 1990. They sought "injunctive relief enjoining the defendant Mazda to approve the purchase agreement...." By way of preliminary relief, they asked for an injunction that would enable them to continue to operate the Mazda dealership during the pendency of the action.[2] Brady, the franchisee was not a party to the suit.
On September 13, 1990, the court heard testimony relevant to plaintiffs' application for a preliminary injunction. The attorney representing Mr. Seneca against the criminal charges testified, and the judge found, that those charges were about to be disposed of by Mr. Seneca's admission into the Pretrial Intervention Program. Mr. Seneca testified that when he answered "no" to the question on his application inquiring whether he had ever been a "defendant in any law suit or legal processing," he understood the question to be asking only about civil, not criminal, proceedings. *54 The judge determined that that was a reasonable interpretation of the question and that Mr. Seneca's answer was not a misrepresentation.
There was some testimony that "for a long time" "it's been basically general knowledge in the East Brunswick area about Mr. Seneca." But the source of this testimony was Mazda's district service manager whose wife was employed by the dealership and who expected to lose her job if the franchise was transferred to plaintiffs. There was no other evidence and no finding of fact that Mr. Seneca suffered from any notoriety because of his criminal involvement with illegal drugs.
At the conclusion of the hearing, the court ruled that holding Mr. Seneca ineligible to become a Mazda franchisee because of his past cocaine use would be contrary to New Jersey's strong public policy in favor of rehabilitating recovering addicts. Since no evidence had been offered showing that Mr. Seneca was presently unfit to function as a car dealer, the judge concluded that there was a strong probability that he would prevail at final hearing and that if plaintiffs could not operate as a Mazda dealer in the interim, they would suffer irreparable injury. The court therefore entered an order "that plaintiffs shall immediately be granted the right to act as franchisees for the defendant, Mazda Motors of America, Inc. subject to any finding that plaintiffs have a problem that would directly affect their ability to operate the franchise as determined at the Final Hearing...."[3]
At the final hearing, which was conducted on May 20, 21 and 27, 1992, Mr. Seneca testified that he was a recovering drug addict. He said that he had started using cocaine in 1984 when someone offered it to him at a wake for his brother and sister-in-law who had been killed in an automobile accident the morning after his father died. He admitted that he continued using cocaine regularly *55 and very frequently until October 19, 1989. He stated that he did not remember the quantity of cocaine he ingested, but he agreed with the judge that he "spent a lot and used a lot." Mr. Seneca testified that he last used cocaine on October 19, 1989, the day before his birthday[4].
Despite this substantial period of addiction, the record supports the trial judge's finding that Mr. Seneca has not used cocaine since October 19, 1989. The record also shows that during the pendency of this law suit, his performance as a Mazda dealer has been no worse than satisfactory and, from Mazda's perspective, plaintiffs' operation of the dealership may have been an improvement over their predecessor's.
During the course of the final hearing, Mazda introduced into evidence plaintiffs' application to Chrysler Corporation for its approval of the transfer to them of Mr. Brady's Chrysler franchise. That application was filled out and submitted approximately a month after the Mazda application. The Chrysler application asked, unambiguously:
Are you, or any business in which you were either a principal owner, officer of [sic] director, a party to any presently pending civil or criminal action or administrative proceeding?
Mr. Seneca answered the question, "No." When Mazda sought to cross-examine him about why he had not disclosed the pending criminal indictments to Chrysler, plaintiffs objected and the trial judge sustained their objection. In explanation of his ruling, he stated that he had decided at the close of the hearing on the preliminary injunction that Mazda's application was ambiguous and that Mr. Seneca had not misrepresented when he failed to disclose the indictments in response to the question asking him whether he was "a defendant in any law suit or legal processing." "I have already ruled finally on the application and his answers thereto," the judge said, "[a]nd the only thing that I am trying *56 here today is whether or not his state as an addict in itself interferes with his ability to have a Mazda Agency." Later, the judge reiterated his ruling that Mr. Seneca had not filed a false application with Mazda because its application did not call for him to disclose his indictments.
At the conclusion of the final hearing, the judge ruled that since Mazda had not shown that Mr. Seneca would be unable to function as an automobile dealer, it would not be permitted to refuse to accept plaintiffs as its franchisees. In accordance with this ruling, a final judgment was entered declaring that "said plaintiffs are entitled to be Mazda franchisees."
Mazda has appealed. It contends that plaintiffs were never "offered or granted" a franchise. See N.J.S.A. 56:10-3. From that premise, it argues that since a franchisee is "a person to whom a franchise has been offered or granted," plaintiffs did not become franchisees, and only a franchisee has standing to invoke the protection granted by the Act. Tynan v. General Motors Corp., supra, 248 N.J. Super. at 660-666, 591 A.2d 1024. Alternatively, Mazda contends that even if plaintiffs did become franchisees by operation of N.J.S.A. 56:10-6, they failed to carry their burden of showing that its rejection of them as transferees of the franchise was unreasonable, and it also asserts that the court committed serious procedural errors.
Plaintiffs assert that by force of N.J.S.A. 56:10-6, Mazda's approval of Mr. Brady's transfer of his franchise to them must be "deemed granted" because Mazda did not reject their application within sixty days after they had given it statutory notice of the proposed transfer. If that assertion is correct, upon expiration of the sixty-day period plaintiffs became, as a matter of law, "person[s] to whom a franchise is offered" and, therefore, "franchisees" within the definition of N.J.S.A. 56:10-3. If they were franchisees, they had standing to challenge Mazda's action as either a wrongful refusal to transfer under the standards of N.J.S.A. 56:10-6 or as the termination of a franchise without good cause within the meaning of N.J.S.A. 56:10-5. They contend that *57 Mazda's refusal to accept them as franchisees would fail either challenge.
N.J.S.A. 56:10-6, states:
It shall be a violation of this act for any franchisee to transfer, assign or sell a franchise or interest therein to another person unless the franchisee shall first notify the franchisor of such intention by written notice setting forth in the notice of intent the prospective transferee's name, address, statement of financial qualification and business experience during the previous 5 years. The franchisor shall within 60 days after receipt of such notice either approve in writing to the franchisee such sale to proposed transferee or by written notice advise the franchisee of the unacceptability of the proposed transferee setting forth material reasons relating to the character, financial ability or business experience of the proposed transferee. If the franchisor does not reply within the specified 60 days, his approval is deemed granted. No such transfer, assignment or sale hereunder shall be valid unless the transferee agrees in writing to comply with all the requirements of the franchise then in effect. [Emphasis added.]
Plaintiffs contend that Mazda was properly notified of the proposed transfer when they completed and submitted Mazda's standard form of application on or shortly after April 30, 1990. Therefore, they maintain, the 60-day period for rejecting them as franchisees had expired long before Mazda delivered its letter of rejection to Mr. Brady on August 10, 1990.
Mazda, on the other hand, asserts that the 60-day period did not begin to run until a fully completed application had been submitted. Plaintiffs concededly did not submit a copy of their parts settlement accounts memo until August 7, 1990. They never submitted a copy of their floor plan agreement. They could not have submitted a copy of the final form of their assets purchase agreement with Mr. Brady until after it was amended on August 3, 1990. Therefore, Mazda contends, plaintiffs' application was never completed and consequently the time within it which it was free to reject the transfer for reasons other than those permitted by the Franchise Practices Act had not expired on August 10.
The franchisee's notice of intent to transfer, whose submission to the franchisor starts the running of the 60-day period, must set forth "the prospective transferee's name, address, statement of financial qualification and business experience during the *58 previous 5 years." N.J.S.A. 56:10-6. That data, together with whatever other information the franchisor obtains by its own investigation, is intended to serve as the basis for the franchisor's decision whether there are any "material reasons relating to the character, financial ability or business experience" of the transferee that would make the proposed transferee unacceptable as a franchisee. Ibid. If the information which the franchisee submits to the franchisor is incomplete or inadequate for its intended function, the statutory scheme implies that the franchisor is entitled to ask for relevant, reasonably necessary additional information and that the running of the 60-day period is tolled until that information is supplied.
In the present case, the application form which plaintiffs submitted to Mazda on April 30, 1990, or shortly afterwards, was the first written statement to Mazda that Mr. Brady intended to transfer his franchise to plaintiffs. It indicated the proposed transferees' names, addresses, financial qualifications, and business experience within the previous five years. It therefore started the running of the period for rejecting the transfer if it provided all of the information material to the transferee's "character, financial ability [and] business experience" that was reasonably necessary for Mazda's decision, and if it did not contain a material misstatement.
That brings us to the question of the significance of the documents that were not submitted with the application to transfer the franchise, i.e., the parts settlements accounts memo, floor plan agreement, and final form of the assets purchase agreement. We agree that Mazda was probably entitled to demand those documents before plaintiffs were accepted as franchisees. But the statute makes a distinction between a franchisor's determining that proposed transferees are acceptable as franchisees and its accepting them in that capacity. According to the N.J.S.A. 56:10-6, no transfer, assignment or sale of a franchise "shall be valid unless the transferee agrees in writing to comply with all the requirements of the franchise then in effect." A duly executed *59 parts settlement accounts memo, floor plan agreement, and assets purchase agreement may very well be reasonable requirements of a franchise agreement between an automobile manufacturer or distributor and one of its dealers. If so, a franchisor could reasonably refuse to execute a franchise agreement with its new dealer until those documents were submitted, whether or not they affected the prospective dealer's acceptability. They would be material to acceptability only if they were relevant to the transferee's "character, financial ability [and] business experience." Their omission would toll the running of the 60-day period only if their omission was material to acceptability.
In the present case, the trial judge was not asked to find, and we cannot tell from the record, whether the missing documents were reasonably necessary to enable Mazda to decide whether plaintiffs' "character, financial ability [and] business experience" made them acceptable franchisees. We therefore cannot determine whether the omission of those documents from the transfer application extended the time within which Mazda was entitled to approve or reject the transfer of the franchise for reasons that would not suffice if plaintiffs were already franchisees.
That conclusion requires us to address the issue of whether there was any material misstatement in the transfer application. In our view, the question in Mazda's application form which asked whether Mr. Seneca was or had been a "defendant in any law suit or legal processing [sic]," clearly called for him to disclose the criminal indictments pending against him. If the phrase is interpreted reasonably, rather than literally, "legal processing" would be read to mean "legal proceeding." In other words, sensibly interpreted, the question asks whether Mr. Seneca was a party to a law suit or other legal proceeding. If the phrase "legal processing" is interpreted literally, it asks whether he has been subject to "legal processing" other than in a law suit. In either case, the accurate answer is, "yes." The criminal proceedings against Mr. Seneca were clearly legal proceedings or a law suit and they subjected him to considerable "legal processing" in *60 court and in police headquarters. We conclude that his omission of any reference to the criminal proceedings pending against him constitutes a factual misrepresentation.[5]
Furthermore, the omission was material. The pendency of the four indictments for violation of the firearms and narcotics laws, two for possession of cocaine with intent to distribute it, was clearly relevant to Mazda's decision whether to accept plaintiffs as franchisees. Clearly, any reasonable automobile manufacturer or distributor in Mazda's situation would have wanted to know about the indictments in order to explore their implications, to conduct further investigations of Mr. Seneca, and to consider all of the relevant facts.
Mr. Seneca's failure to reveal his criminal indictments in his answer to the unambiguously phrased question on the Chrysler application form which asked for the disclosure of that information is persuasive evidence that his answer on the Mazda application was wilfully false. The court reporter's exhibit marking *61 on the Chrysler application suggests that Mazda's attorneys obtained it in discovery after the conclusion of the preliminary hearing. The trial court erred in refusing to permit Mazda to cross-examine Mr. Seneca about that answer on the Chrysler application and it also erred in declining to reconsider whether, in the light of the Chrysler application, Mr. Seneca's answer on the Mazda application was willfully false. If the intent with which Mr. Seneca misstated his involvement with the criminal law were material, we would remand the case to enable the parties to develop the relevant facts and for reconsideration of that issue by the trial judge.
However, a remand is unnecessary because Mr. Seneca's intent is immaterial. Plaintiffs' material misstatement lulled Mazda into refraining from further investigation. Even if the misstatement was unintentional, submission of the misleading application cannot justly be held to have had the effect of starting the running of the 60-day period whose expiration would constrain the franchisor's right to reject plaintiffs as transferees. We therefore hold that even an inadvertent misrepresentation of material fact to a franchisor in a notice of intent to transfer prevents the notice from starting the running of the 60-day period at whose lapse the proposed transfer will be deemed approved. Cf. Teas v. Third National Bank & Trust Co., 125 N.J. Eq. 224, 228, 4 A.2d 64 (E & A 1939) (equitable fraud will toll the statute of limitations). Mazda's August 10, 1991 letter rejecting plaintiffs as transferees was therefore not untimely, and plaintiffs did not become franchisees within the definition of N.J.S.A. 56:10-3.
We held in Tynan v. General Motors Corp., supra, 248 N.J. Super. 654, 591 A.2d 1024 that plaintiffs who are not franchisees do not have standing to invoke the protection of the New Jersey Franchise Practices Act. Whatever may have been his reasons, Mr. Brady, the former franchisee, chose not to join in this suit. Consequently, Mazda was not obliged to show that its reasons for refusing to enter into a franchise agreement with plaintiffs satisfied the requirement implicit in N.J.S.A. 56:10-6 *62 that the rejection of a transferee must be grounded on "material reasons relating to the character, financial ability or business experience of the proposed transferee," and its failure to satisfy that requirement did not entitle plaintiffs to injunctive relief.
Furthermore, we conclude that even if plaintiffs had standing, they could not legally compel Mazda to enter into a franchise agreement with them. Mazda's reasons for refusing to approve them as franchisees were the indictments pending against Mr. Seneca and what it perceived to be his dishonest concealment of them. We recognize that indictments are accusations and in a trial they may not be considered as proof of guilt. Nonetheless, we accept an indictment as justification for the issuance of a warrant for the arrest of an accused. An indictment results in his being incarcerated or held to bail. It authorizes the courts to subject an accused to an onerous process involving numerous court appearances and leading to a criminal trial. In other words, although indictments are inadmissible as evidence of guilt, the criminal justice system recognizes that a very high proportion of persons indicted are ultimately convicted of a crime, and it behaves accordingly. A franchisor, operating in a commercial context, is legally entitled to act upon the same commonsense conclusion and to decline to enter into a business partnership with a prospective franchisee who has been indicted for serious crimes.[6]
Moreover, although we have accepted for purposes of our decision the trial judge's finding that Mr. Seneca's concealment of the indictments was not intentional, Mazda was entitled to reach and to act upon a contrary conclusion when it decided not to enter into a franchise agreement with him. Additionally, if the indictments had been disclosed, they would have led Mazda to discovery of Mr. Seneca's frequent, heavy use of cocaine over a period of more than four years, ending less than one year before submission *63 of his application to become a franchisee. His admission of that use also implies an admission of his continual violation of the criminal laws over that same period. Mazda was not legally entitled to refuse to contract with Mr. Seneca because of his addiction. See N.J.S.A. 10:5-12(l) (prohibiting discrimination in contracting); N.J.S.A. 10:5-4.1 (extending the protections of the Law Against Discrimination to handicapped persons); Matter of Cahill, 245 N.J. Super. 397, 585 A.2d 977 (App.Div. 1991) (defining a drug addict as a handicapped person); see also Estate of Behringer v. Princeton Med. Ctr., 249 N.J. Super. 597, 642-644, 592 A.2d 1251 (Law Div. 1991) (surgeon handicapped by AIDS is protected by LAD). But it was entitled to act on the basis of Mr. Seneca's criminal indictments, perceived dishonesty, and implicit admission of serious crimes. They are all matters which it could reasonably conclude were material to his character and which, therefore, consistently with N.J.S.A. 56:10-6, entitled it to decide that Mr. Brady's transfer of the franchise to him and his partner was unacceptable.
The judgment appealed from is therefore reversed, the injunction is vacated, and a judgment of no cause for action is hereby entered in favor of defendants.
NOTES
[1] The complaint named Mazda Motors of America, Inc. and W.D. Goetze as defendants. Mr. Goetze is the Mazda official who apparently had final responsibility for approving or rejecting plaintiffs' application to assume Mr. Brady's Mazda franchise. However, no relief was sought or granted against Mr. Goetze individually.
[2] Plaintiffs' complaint refers both to the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1 to -15, and to several common law causes of action as the basis for their claims. But in their trial before the Chancery Division and during the argument before our court, plaintiffs relied only on the Franchise Practices Act. Any common law causes of action were preempted by the Franchise Practices Act. Tynan v. General Motors Corp., 248 N.J. Super. 654, 670, 591 A.2d 1024 (App.Div. 1991), modified on other grounds, 127 N.J. 269, 604 A.2d 99 (1992).
[3] We denied defendants' motion for leave to appeal from the preliminary injunction and denied their motion to reconsider. The Supreme Court also denied leave to appeal.
[4] Mr. Seneca was not asked specifically about the indictment charging him with possession of less than half an ounce of cocaine with an intent to distribute it on December 7, 1989.
[5] The trial court interpreted the question without considering any extrinsic evidence. The interpretation of a written document solely on the basis of its own terms, without reference to extrinsic evidence, is a question of law. Spinelli v. Golda, 6 N.J. 68, 79-80, 77 A.2d 233 (1950) (interpretation of contract which does not depend on extrinsic evidence is matter of law for the court); Davis v. The Equitable Life Assur. Soc., 90 N.J. Super. 328, 331, 217 A.2d 459 (App.Div. 1966) (court, not jury, should have construed insurance policy); Andreaggi v. Relis, 171 N.J. Super. 203, 212, 408 A.2d 455 (Ch.Div. 1979) (the construction of a written instrument, the terms of which are not in dispute, is a question of law). Consequently we are not required to give any special deference to the trial court's interpretation of the questions in Mazda's application form. Cf. Amer. Photocopy Eq. Co. v. Ampto, Inc., 82 N.J. Super. 531, 542, 198 A.2d 469 (App. Div.), certif. denied, 42 N.J. 291, 200 A.2d 125, cert. denied, 379 U.S. 842, 85 S.Ct. 80, 13 L.Ed.2d 47 (1964) (appellate court may dispose of case on appeal when its decision turns on the interpretation of written documents whose meaning is not significantly affected by the credibility of witnesses). See also Snyder Realty, Inc. v. BMW of North America, 233 N.J. Super. 65, 69, 558 A.2d 28 (App.Div.), certif. denied, 117 N.J. 165, 564 A.2d 883 (1989) (appellate court may make its own findings when, accepting trial judge's credibility determinations, it is convinced that a mistake was made); Pioneer National Title Insurance Co. v. Lucas, 155 N.J. Super. 332, 338, 382 A.2d 933 (App.Div.), aff'd o.b., 78 N.J. 320, 394 A.2d 360 (1978) (same).
[6] We do not decide what if any effect there would be on Mazda's right to reject the transfer if it knew prior to the rejection that Seneca had been acquitted or admitted to PTI.