787 A.2d 951

VW CREDIT, INC., PLAINTIFF–RESPONDENT, v. COAST AUTO-MOTIVE GROUP, LTD., D/B/A TSE MOTOR CARS D/B/A TSE VOLKSWAGEN, D/B/A TSE AUDI, D/B/A TSE PORSCHE D/B/A TSE MERCEDES–BENZ, D/B/A TSE SAAB, SHANSAB ENTER-PRISES, INC., SHANSAB REALTY, INC., TAMIN SHANSAB, NASIR SHANSAB AND YAMA SHANSAB, DEFENDANTS–RE-SPONDENTS, AND TAMIN SHANSAB, SHANSAB ENTERPRIS-ES, INC., SHANSAB REALTY, INC., DEFENDANTS/ THIRD PARTY PLAINTIFFS–RESPONDENTS, v. JOHN LIEPHART, THIRD–PARTY DEFENDANT, AND VOLKSWAGEN OF AMER-ICA, AUDI OF AMERICA, THIRD–PARTY DEFENDANTS–AP-PELLANTS, AND ASPEN KNOLLS AUTOMOTIVE GROUP, LLC, AS SUCCESSOR IN INTEREST TO B & S LENDER, LLC, INTERVENOR–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 12, 2001—Decided January 4, 2002.

328

Before Judges BAIME, NEWMAN and FALL.

*William E. Reifsteck,* argued the cause for appellants (*Capehart & Scatchard,* attorneys; *Mary Ellen E. Schetter,* on the brief).

*Geoffrey J. Hill,* argued the cause for respondents, Coast Automotive Group, Shanshab Enterprises, Inc., Shanshab Realty, Inc., and Tamin Shanshab (*Richard S. Mazawey* attorneys; *Mr. Hill* on the brief).

*George R. Hirsch,* argued the cause for intervenor-respondent (*Bressler, Amery & Ross,* attorneys; *Mr. Hirsch* on the brief).

Respondent VW Credit, Inc. has not submitted a brief.

The opinion of the court was delivered by

NEWMAN, J.A.D.

■ The primary issue in this appeal concerns the refusal of a franchisor to consent to the franchisee's transfer of the franchises, *N.J.S.A.* 56:10–6, and the consequences when that consent is found by a court to be unreasonably withheld. We conclude that the Franchise Practices Act, in particular *N.J.S.A.* 56:10–6, contemplates that the remedy of specific performance is available to compel the transfer where a franchisor has unreasonably withheld its consent to that transfer.

The history of this litigation is quite extensive. Defendant, Coast Automotive Group, Ltd. d/b/a TSE Motor Cars (Coast) is an authorized dealer of Volkswagen and Audi automobiles pursuant to dealer agreements and dealer operating standards with third-party defendants, Volkswagen of America, Inc. (VWOA) and Audi of America (AOA). Coast operated its automobile dealership on

the real property owned by Shansab Realty, Inc. located at Route 37, Toms River. In March 2001, there was a fire at Coast's site that substantially destroyed the dealership.

A provision of the dealer operating standards, which VWOA and AOA contend is an integral part of the dealer agreements, requires that Coast maintain separate wholesale lines of credit for the purchase of the new motor vehicles from VWOA and AOA. Coast satisfied this requirement by obtaining a wholesale line of credit and other financing from plaintiff, VCI Credit, Inc. (VCI), which is a wholly owned subsidiary of VWOA. Coast defaulted in its payments to VCI. VCI filed this action against Coast in the Law Division (Law Division action), which prompted Coast to file for protection under a bankruptcy reorganization plan. Coast also filed an action in the federal district court entitled *Coast Automotive Group, Ltd. v. VW Credit, Inc., et al,* Civil Action No. 97-2601 (D.N.J.).

Tamin Shansab (Shansab), the principal of Coast, entered into an agreement with B & S Lenders LLC, (B & S), the predecessor-in-interest to intervenor, Aspen Knolls Automotive Group, LLC (Aspen Knolls), to borrow $5,000,000 in order to salvage its franchise investment and avoid liquidation under its bankruptcy plan. The loan proceeds enabled Coast to repay its creditors, including $4,000,000 owed to VCI. As security for the loan, Coast agreed to transfer its assets to B & S or its successors—Aspen Knolls. Aspen Knolls consists of three principals. Two of the principals, Paul Reynolds and Salvatore Rutigliano, operate an Audi dealership in Bernardsville. The third principal, Robert Mazzuoccola, operates a Jeep dealership in Essex County.

Litigation between Coast and B & S ensued in the Chancery Division, Ocean County (Chancery action), which resulted in Coast's execution and delivery to B & S of an Amended and Restated Promissory Note dated May 14, 1998, and related security documents.

In the interim, VWOA and AOA, third party defendants in the Law Division action, filed claims against Coast in that same

litigation to terminate Coast's Volkswagen and Audi franchises. The Law Division, after a hearing, entered an order that preliminarily enjoined proceeding with the termination of the franchises. The Law Division also granted leave to VWOA and AOA to file an amended counterclaim against Coast seeking rescission of the franchise agreements.

On August 18, 1999, B & S moved in the Chancery Division for the appointment of a receiver for Coast in accordance with *N.J.S.A.* 14A:14–1 *et seq.,* as well as other relief. The parties to that action, Coast and B & S, entered into a consent order, which incorporated a certain asset sale agreement and real estate sale agreement. The agreements provided that Aspen Knolls, assignee of B & S, would acquire Coast's Volkswagen, Audi, and Porsche dealership franchises together with the real property upon which the dealerships were located. In entering into that consent order, Aspen Knolls relied on the Law Division's order enjoining VWOA and AOA from terminating the Volkswagen and Audi franchises.

In accordance with the consent order, the parties advised VWOA and AOA of the proposed transfer and provided the notice required by *N.J.S.A.* 56:10–6. That section also requires a franchisor to issue a letter of disapproval if the franchisor objects to the proposed transferee as unqualified. VWOA and AOA replied to that notice with the filing of an order to show cause for a preliminary injunction to enjoin the sale. On March 3, 2000, the Law Division granted B & S's motion to intervene in that matter and denied the application for a preliminary injunction. On March 16, 2000, this court denied VWOA and AOA leave to file an interlocutory appeal.

On May 1, 2000, Aspen Knolls submitted applications for transfer of the Volkswagen and Audi dealer franchises. On June 29, 2000, VWOA and AOA issued letters disapproving the applications. VWOA and AOA based their disapproval on the claimed deficient application as well as character concerns of Aspen Knolls' majority member, Robert Mazzuoccola.

Coast and Aspen Knolls, as limited intervenor, filed an order to show cause to enforce their rights under the consent order, and sought to compel the transfer of the franchises. The Law Division held a hearing on that application and on August 23, 2000, issued an order directing that the parties continue the application process, so that VWOA and AOA could advise Aspen Knolls regarding the application requirements. In this regard, the judge found that the June 29, 2000, disapproval letters were void and ineffective, because VWOA and AOA did not advise Aspen Knolls of the conditions for franchise approval. The judge stated that

if a franchisor is entitled to reject a good faith but deficient application at the same time when it hasn't fully disclosed its requirements for an acceptable application, then the Franchise Practices Act would have virtually no teeth because then every franchisor could circumvent the law by either creating a contentious environment or by failing to supply adequate information in order to comply with the requirements of law.

On October 3, 2000, this court denied VWOA and AOA leave to stay that order.

Thereafter, Aspen Knolls submitted a second set of applications that VWOA and AOA disapproved on September 22, 2000. VWOA and AOA based their disapprovals on grounds substantially similar to those of June 29, 2000. The Law Division then scheduled discovery and held a plenary hearing on May 15 and 16, 2001, to determine if the consent to the transfer of the franchises was being unreasonably withheld.

Based on the testimony and evidence presented at the hearing, Judge Marlene Lynch Ford found that VWOA and AOA did not act in good faith when they withheld approval of Aspen Knolls' applications. First, the judge determined that Aspen Knolls had standing on the limited issue of whether VWOA and AOA wrongfully withheld consent to the transfer of the franchise. The judge distinguished *Tynan v. Gen. Motors Corp.*, 248 *N.J.Super.* 654, 591 *A.*2d 1024 (App.Div.) *certif. denied*, 127 *N.J.* 548, 606 *A.*2d 362 (1991) *rev'd in part on other grounds*, 127 *N.J.* 269, 604 *A.*2d 99 (1992), a case where the franchisee did not challenge the franchisor's decision to disapprove of the proposed transfer. Then,

considering the prior history of litigation and contractual dispute between Coast and Aspen Knolls, the judge determined that it would be inappropriate to preclude Aspen Knolls from participating in the plenary hearing on the issue of the withholding of consent to the transfer.

Judge Ford found that VWOA and AOA unreasonably withheld their approval to the proposed transfer. The judge declared the disapproval letters issued by VWOA and AOA to be ineffective and directed that Aspen Knolls' applications be deemed approved subject to the obligation of *N.J.S.A.* 56:10–6, which requires the proposed franchisee to agree to comply with the conditions of the existing franchise agreement. The judge's decision was reflected in a written order entered on June 28, 2001, which she certified as final pursuant to *R.* 4:42–2.

I.

On appeal, VWOA and AOA contend that Aspen Knolls did not have enforceable rights against the franchisee or franchisor and therefore lacked standing.

 Aspen Knolls has standing to proceed in this action to compel transfer under *N.J.S.A.* 56:10–6 as an indispensable intervening party. *R.* 4:33–1 requires the applicant claim "an interest" relating to the property or transaction that is the subject of the action. Here, Aspen Knolls, the holder of the $5,000,000 promissory note executed by Coast and purchaser under the asset purchase agreement and real estate sales agreement, has a substantial interest in the transfer of the Volkswagen and Audi franchises. The trial judge properly distinguished *Tynan, supra,* and noted, based upon the litigious history between Coast and Aspen Knolls, that Coast could not adequately represent the interests of Aspen Knolls.

We are persuaded that Judge Ford properly exercised her discretion and will not disturb the trial court's limited grant to Aspen Knolls to intervene. *State v. Lanza,* 39 *N.J.* 595, 600, 190

*A.*2d 374 (1963), *cert. denied,* 375 *U.S.* 451, 84 *S.Ct.* 525, 11 *L.Ed.*2d 477 (1964)(grant of permission to intervene in an action is committed in the first instance to discretion of trial court, and ordinarily such applications are treated liberally).

## II.

Although not set forth in a separate point heading as required by *R.* 2:6–2(a)(5), VWOA and AOA contend that the trial court abused its discretion in entering the preliminary injunction enjoining a proceeding to terminate the franchises.

A franchisor's termination of a franchise agreement without good cause constitutes a violation of the Act, *N.J.S.A.* 56:10–5, and the franchisee may seek injunctive relief, *N.J.S.A.* 56:10–10. In her written decision, following a hearing held on August 3, 1999, Judge Ford concluded that Coast demonstrated a reasonable probability of eventual success on the merits of its claim that VWOA and AOA lacked good cause to terminate the franchises and that Coast would suffer irreparable injury if relief was not granted. She therefore enjoined VWOA and AOA from terminating the franchises during the pendency of this action.

VWOA and AOA have not provided this court with a record to evaluate the circumstances surrounding that injunction, and we could affirm on that ground alone. *Keehn v. Laubach,* 133 *N.J.L.* 227, 229, 43 *A.*2d 857 (Sup.Ct.1945). However, despite their failure, at the hearing held before Judge Ford on March 3, 2000, upon the motion of VWOA and AOA to restrain the proposed transfer between Coast and Aspen Knolls, the judge referenced the order she entered restraining the termination of the franchises.

There, the judge stated that the parties should exchange discovery and proceed on the merits and then, after the parties had an opportunity to be heard, she would determine whether the franchises were effectively terminated or whether they should be rescinded. In refusing to enjoin the sale, the judge noted that Coast was attempting to avoid substantial economic losses by

entering into a transaction to resolve the problems presented in the case and moot the issues of termination and rescission. She stated that the laws surrounding commercial transactions protect and encourage the obligation of a party to mitigate its damages. The judge noted that *N.J.S.A.* 56:10–6 provides a channel for the franchisee to fulfill its obligation through a sale of the franchise subject to franchisor approval. Consequently, she denied VWOA and AOA's application to enjoin the sale, allowed the matter to proceed on the issue of the validity of the refusal to consent to transfer, and continued the restraint on proceeding with the issues of termination or rescission of the franchises.

Judge Ford chose to enter the preliminary injunction to maintain the status quo and afford Coast an opportunity to limit its economic losses and complete the transfer to Aspen Knolls. According to the record, Coast, while it did not have the appropriate wholesale line of credit in place, was not in default in payments to VWOA or AOA, as it had been paying for any current deliveries C.O.D. This is not a case where a franchisee was in substantial breach of its obligations under the franchise agreements, which would prohibit a preliminary injunction against termination. *See Simmons v. Gen. Motors Corp.,* 180 *N.J.Super.* 522, 543, 435 *A.*2d 1167 (App.Div.), *certif. denied,* 88 *N.J.* 498, 443 *A.*2d 712 (1981) (trial judge erred in enjoining termination of franchise where franchisee was in substantial breach of the franchise and had transferred ownership without complying with *N.J.S.A.* 56:10–6); *Dunkin' Donuts v. Middletown Donut Corp.,* 100 *N.J.* 166, 182, 495 *A.*2d 66 (1985) (court should not grant equitable relief to franchisee whose own knowingly fraudulent conduct is the cause of the termination).

Under the circumstances, the preliminary injunction entered was appropriate, reasonable, and within the authority of the court to issue. *Westfield Ctr. Serv., Inc. v. Cities Serv. Oil Co.,* 86 *N.J.* 453, 466–67, 432 *A.*2d 48 (1981) (trial court may issue temporary injunctive relief or restraints (1) to maintain the status quo during litigation, (2) to provide a franchisee with some additional time to

wind up or move its business, or (3) for any other equitable purpose).

The termination having been enjoined, Coast remained the franchisee with all of its rights governed by the Act, including the right to transfer under section six of the Act.

## III.

VWOA and AOA assert that the Act does not authorize the relief granted by the trial court. VWOA and AOA argue that the court erred in determining that the consent was unreasonably withheld and, even if it was, the court was limited to awarding damages under *N.J.S.A.* 56:10–10 for a violation of the Act, and only to a franchisee, not to a potential transferee who is not covered by the Act. In the alternative, VWOA and AOA assert that the trial court's judgment amounts to an unconstitutional taking.

The pivotal provision of the Act in terms of the transfer or sale of a franchise is *N.J.S.A.* 56:10–6, which provides:

> It shall be a violation of this act for any franchisee to transfer, assign or sell a franchise or interest therein to another person unless the franchisee shall first notify the franchisor of such intention by written notice setting forth in the notice of intent the prospective transferee's name, address, statement of financial qualification and business experience during the previous 5 years. The franchisor shall within 60 days after receipt of such notice either approve in writing to the franchisee such sale to proposed transferee or by written notice advise the franchisee of the unacceptability of the proposed transferee setting forth material reasons relating to the character, financial ability or business experience of the proposed transferee. If the franchisor does not reply within the specified 60 days, his approval is deemed granted. No such transfer, assignment or sale hereunder shall be valid unless the transferee agrees in writing to comply with all the requirements of the franchise then in effect.

We have previously interpreted *N.J.S.A.* 56:10–6 to impose a requirement of reasonableness on a franchisor's decision to disapprove a transfer. *Simmons, supra,* 180 *N.J.Super.* at 539, 435 *A.*2d 1167. The standard of review to determine the reasonableness of withholding consent to transfer of a franchise is an objective test that requires that the decision be supported by

substantial evidence showing that the proposed franchisee is materially deficient. *In re Van Ness Auto Plaza, Inc.* 120 *B.R.* 545, 549 (Bankr.N.D.Cal.1990). The burden of presenting credible reasons for the refusal to consent rests on the franchisor. *Ibid.* We agree with the trial judge that VWOA and AOA did not meet this burden.

In support of their determination to withhold consent, VWOA and AOA asserted that Aspen Knolls submitted a deficient application and that there were concerns related to the character of Mazzuoccola, the majority member of Aspen Knolls. The trial court made the following findings regarding the reasons asserted by VWOA and AOA for withholding consent to assignment of the franchise.

As to the issue of business experience, the court found that Reynolds and Rutigliano, both of whom are principals of Aspen Knolls, began to operate an Audi Dealership in Bernardsville in 1995, and within the first year of operation, the dealership was ranked third in the nation in volume and sales. Since its inception, that dealership has maintained a high ranking among the 365 Audi dealerships in the country in terms of sales and volume. There was also testimony that the Bernardsville dealership ranked in the top ten percentiles in customer satisfaction in both the regional area and the nation. The judge also noted that Reynolds and Rutigliano had extensive prior experience as automobile dealers.

Mazzuoccola's experience was not as extensive. However, the judge noted that Mazzuoccola, a race car enthusiast who sponsored a professional racing team, did own a Jeep dealership in Essex County. The judge found that Aspen Knolls, an entity comprising Reynolds, Rutigliano, and Mazzuoccola, demonstrated an ability to operate the Coast dealership.

As to the issue of VWOA and AOA's concerns regarding Mazzuoccola's character, the judge noted that VWOA and AOA based those concerns upon certain allegations raised in an affidavit filed

by Shansab in the litigation between Coast and Aspen Knolls. The affidavit, which had been withdrawn by Shansab, raised issues of whether Mazzuoccola had affiliated or associated with known organized crime figures as well as the propriety of his business practices. The underlying litigation in which the affidavit had been submitted settled, and Shansab withdrew the allegations, joining with Aspen Knolls to compel the transfer. In this regard, the judge noted that

> no testimony was produced by either side to address the allegations that related to the character, allegations involving Mr. Mazzuoccola. And that Mr. Mazzuoccola, in fact, took the stand and exposed himself to the opportunity for cross examination by the ... franchisor's representatives. That the issue of his involvement with any unsavory business activities, or association with undesirable individuals, or people of known criminal connections or histories or even personalities, was just not raised.
>
> ....
>
> [T]he hearing was ... scheduled primarily to address these issues of character. ... I continue to be fully satisfied that any purported deficiencies in terms of character have not been proved. And even if raised ... [the allegations] have been effectively dispelled through the testimony of the parties. ... Character, then, cannot form a basis for the rejection of the proposed franchisees under ... these circumstances.

The judge next determined the issue of financial ability, commenting as follows:

> That left only the issue of financial ability as the reason for the rejection as transferee. ... Volkswagen and Audi maintain that Aspen Knolls had failed to provide upon request sufficient financial information by which an assessment of the transferee's financial ability could be made, and thus they argue that as a matter of law the franchisor was justified in rejecting them upon their application, and the application of Coast, to approve them as a Volkswagen/Audi Franchisee.
>
> ....
>
> If the submissions were deficient I think that it's within reasonable business practices and the intent of the Franchise Practices Act to direct that ... Audi and Volkswagen, in effect, provide what requirements and then allow the opportunity for the franchisee to meet those requirements by way of a formal commitment. ...
>
> [T]he statute, itself provides that Aspen Knolls would have to agree in writing to comply with the requirements of the franchise in effect. ... [T]hat clearly would include not just operational guidelines, and so forth, but also what the obligations were in terms of capitalizing this project.
>
> ....
>
> [T]he letter issued by Volkswagen and Audi, refusing to approve ... did not constitute a valid rejection of this proposed transferee.

The judge observed that Reynolds and Rutigliano were to provide the business experience and Mazzuoccola would be the primary source of capital. The judge found credible the proofs and testimony submitted by Aspen Knolls that it was ready, willing, and able in September 2000, to meet whatever capitalization, floor plan, corporate and other financial requirements that were required by VWOA and AOA, but that Aspen Knolls was left to guess at what those financial requirements were. The court found particularly instructive an approval letter issued by AOA to Reynolds and Rutigliano in regard to the Bernardsville Audi dealership that set forth extensively the conditions for approval, which addressed financial capitalization, the necessity of a line of credit obligation, and debt equity ratio standards. VWOA and AOA did not issue similar letters to Aspen Knolls.

█ Regardless, unless the submissions were relevant to Aspen Knolls' character, financial ability, or business experience, they were not relevant to the "acceptability" of Aspen Knolls as a franchisee. *Horn v. Mazda Motor of Am., Inc.*, 265 *N.J.Super.* 47, 58, 625 *A.2d* 548 (App.Div.), *certif. denied*, 134 *N.J.* 483, 634 *A.2d* 528 (1993). In *Horn*, this court noted that section six draws a distinction between a franchisor's determining that "proposed transferees are *acceptable* as franchisees and its *accepting* them in that capacity." *Ibid.* There, we commented that a franchisor could reasonably refuse to execute a franchise agreement with the proposed transferee until certain documents were submitted, regardless of whether the submissions affected the prospective transferee's "acceptability." *Id.* at 59, 625 *A.2d* 548. However, the submissions would be material to "acceptability" only if they were relevant to the transferee's "character, financial ability or business experience." *Ibid.* (referring to *N.J.S.A.* 56:10–6). Here, Judge Ford found that the alleged deficient submissions were not relevant to these issues.

We are satisfied that Judge Ford's findings that VWOA and AOA unreasonably withheld their consent to the proposed transfer are supported by adequate, substantial, and credible evidence.

*Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 *N.J.* 474, 484, 323 *A*.2d 495 (1974).

VWOA and AOA's contention that the relief granted by the trial court is not authorized, amounts to a claim that under *N.J.S.A.* 56:10–6, the franchisor has a right to reject a proposed transferee and once it does, regardless of the reasonableness of its disapproval, the remedy of specific performance is unavailable. We disagree.

The Supreme Court has interpreted the requirements of section six as a restriction on the additional powers the Act affords a franchisee. *Westfield Ctr., supra*, 86 *N.J.* at 471, 432 *A*.2d 48. Section six entitles a franchisee to specific performance if the franchisor fails to approve or disapprove of the transfer, in writing, within the sixty day period. *N.J.S.A.* 56:10–6. That section restricts a franchisee's ability to assign a franchise without the franchisor's consent. *Westfield Ctr., supra*, 86 *N.J.* at 471, 432 *A*.2d 48. Section six also restricts a franchisor's ability to reject a proposed transferee. *Ibid.*

When a franchisor receives notice that a franchisee intends to transfer a franchise, section six mandates that the franchisor shall, in writing, inform the franchisee either of its approval of the transfer or "of the unacceptability of the proposed transferee, setting forth the material reasons relating to the character, financial ability or business experience of the proposed transferee" to support the rejection. *N.J.S.A.* 56:10–6. Thus, the franchisor's rejection must be based on a bona fide business decision. In addition, if the franchisor chooses to not respond to the notice within sixty days of that notice, the franchisor's "approval is deemed granted" and the franchise agreement between the franchisee and the franchisor is automatically deemed amended to incorporate such transfer. *Ibid.*

The provisions, read together, evidence that the statute contemplates the remedy of specific performance where the franchisor severs the franchise relationship without good cause,

subject to the proposed transferee's written assurance that it will comply with the existing franchise agreement. In other words, if a franchisor unreasonably withholds consent to a transfer, the franchise transfers to the proposed transferee by operation of law. This is so because the franchisee should not be forced to choose between losing his investment and remaining in the relationship with the franchisor when it has provided a reasonable alternate franchisee. *Larese v. Creamland Dairies, Inc.*, 767 *F*.2d 716, 717–18, (10th Cir.1985). The Legislature afforded the franchisor the sixty-day time period, not as an absolute right for the franchisor to reject the proposed transferee, but so that the franchisor could determine whether the proposed transferee was a qualified alternate franchisee. *Horn, supra*, 265 *N.J.Super.* at 58, 625 *A*.2d 548.

The franchisor should not be able to circumvent the automatic approval contemplated by the Legislature by giving notice of disapproval within the time period and facially complying with section six. We agree with the trial judge that it would be nonsensical for the Legislature to allow for specific performance if the franchisor did nothing, but if the franchisor timely rejected the proposed transfer in bad faith, the franchisee is limited to damages. If such was the case, a franchisor could avoid the requirements of the statute by sending a letter that automatically rejected all transferees. VWOA and AOA cannot sidestep the limits the Act places on their ability to reject a proposed transferee by merely giving lip service to the notice provisions of section six.

It is both a more logical and consistent interpretation of the statutory remedy to authorize the approval, as the judge did here, subject to compliance with the requirements that are deemed a part of the existing franchise agreement. This scheme comports with the distinction drawn in section six, discussed *supra*, between an "acceptable" transferee and the "acceptability" of a transferee. *Horn, supra*, 265 *N.J.Super.* at 58, 625 *A*.2d 548. It also justifies the Legislature's inclusion of relief within section six itself, apart from the general relief of section ten. *See N.J.S.A.* 56:10–6; *N.J.S.A.* 56:10–10.

Section six contemplates the continuation of the franchise, *Westfield Ctr., supra,* 86 *N.J.* at 471, 432 *A.*2d 48, thus specific performance is required to accomplish that expectation. *Merin v. Maglaki,* 126 *N.J.* 430, 435, 599 *A.*2d 1256 (1992) (legislation should be interpreted to fulfill the intent of the legislature "in light of the language used and the objects sought to be achieved"). The principles of statutory construction dictate that when two statutes conflict, the more specific controls over the more general. *See New Jersey Transit Corp. v. Borough of Somerville,* 139 *N.J.* 582, 591, 661 *A.*2d 778 (1995); *Meadowlands Basketball Assoc. v. Dir., Div. of Taxation,* 340 *N.J.Super.* 76, 81, 773 *A.*2d 1160 (2001). Thus, the particular statutory provisions of section six, requiring specific performance for a violation of that section, trump the general provisions of damages available under section ten. This is so, because section six contemplates the transfer and continuation of the franchise. A damage award would not accomplish that objective.

This relief is beneficial to both the franchisor and franchisee. *Hearing on Assembly Bill No.2063 (Franchise Practices Act) before the New Jersey Legislature Assembly Judiciary Committee,* at 38–41 (March 29, 1971). The franchisee who invested time and money in the franchise could minimize its losses and recoup its investment and the franchisor would benefit from the continued operation of its franchise by an able and competent alternate franchisee. The benefits are readily apparent where, as here, the franchisee is in financial straits and in default under the franchise agreements, the dealership has been substantially damaged by fire, and the franchisee has provided a willing and capable transferee who is in position to rebuild the dealership. *Accord Mercedes–Benz of N. Am., Inc. v. Dept. of Motor Vehicles of Florida,* 455 *So.*2d 404 (Fla.Dist.Ct.App.1984), *petition for review denied,* 462 *So.*2d 1107 (Fla. Jan 24, 1985)(interpreting New Jersey Franchise Practices Act to conclude that franchisor should welcome a change from a franchisee that the franchisor considers a dealer in substantial breach of its franchise agreement when that franchisee provided a willing and capable transferee).

Other courts have also recognized these benefits and granted the remedy of specific performance to franchisees and proposed transferees. *Bayview Buick–GMC Truck, Inc. v. Gen. Motors Corp.*, 597 *So.*2d 887 (Fla.Dist.Ct.App.1992)(holding refusal to consent presumptively unreasonable where proposed transferee is already a franchisee of the franchisor); *Culligan Soft Water Serv. of Inglewood, Inc. v. Culligan Int'l Co.*, 288 *N.W.*2d 213 (Minn.1979)(holding refusal to consent unreasonable where proposed transferee is qualified to assume franchise); *DeBauge Bros., Inc. v. Whitsitt*, 212 *Kan.* 758, 512 *P.*2d 487 (1973)(contract for the sale or transfer of franchise, along with real property necessary to operate the business, is a proper subject for specific performance); and *Bidwell v. Long*, 14 *A.D.*2d 168, 218 *N.Y.S.*2d 108 (App.Div.1961)(specific performance granted where the franchise was the prime consideration for the sale, notwithstanding the parent corporation's lack of approval as required by the agreement).

Moreover, in those instances where the remedy of specific performance was denied, the courts found that the franchisor's refusal to consent to transfer was reasonable. *Westfield Ctr., supra*, 86 *N.J.* 453, 467, 432 *A.*2d 48 (holding permanent injunctions not available where a franchisor bases its decision to terminate a franchise on bona fide business reasons); *Horn, supra*, 265 *N.J.Super.* at 47, 625 *A.*2d 548 (App.Div.1993) (reversing final judgment decreeing proposed transferee entitled to automobile franchises because proposed transferee was indicted for narcotics offenses); *Simmons, supra*, 180 *N.J.Super.* at 522, 435 *A.*2d 1167 (franchisor justifiably and timely rejected the proposed transferee where the franchisee and proposed transferee secretly concluded the sale, and misrepresented their activities upon being discovered by the franchisor); *Simonds Chevrolet, Inc. v. Gen. Motors Corp.*, 564 *F.Supp.* 151, 153 (D.Mass.1983)(holding franchisor properly withheld its consent to a proposed transfer of an automobile dealership to a prospective purchaser where proposed purchasers did not evidence a willingness or ability to provide adequate working capital, showed substandard sales performance, and

wished to overlap two different lines of franchisor's cars); *Van Ness, supra,* 120 *B.R.* at 545 (automobile manufacturer reasonably withheld consent to transfer of franchise from a bankruptcy debtor to a proposed new dealer, where substantial evidence supported manufacturer's concerns about proposed dealer's location, consumer satisfaction rating, and service facilities).

Accordingly we hold that specific performance is an appropriate remedy under section six of the Act where a franchisor unreasonably withholds consent to a transfer. We note for completeness, that while the relief granted by the trial judge benefitted Aspen Knolls, the court did not grant relief to Aspen Knolls. Instead, Judge Ford granted relief to the franchisee, Coast. The fact that enforcement of section six results in benefits to a proposed transferee does not render the relief inappropriate.

Lastly, VWOA and AOA argue that the order of the trial judge declaring that Aspen Knolls is entitled to the franchise, subject to the terms of the existing franchise agreement, amounts to an unconstitutional taking. VWOA and AOA rely on the Supreme Court's decision in *Westfield Ctr., supra,* to support their position.

In *Westfield Ctr.,* the defendant who was the franchisor and owner of the real property upon which the franchise was located, contended that the use of injunctive relief compelling the indefinite extension of a franchise arrangement into the future is constitutionally impermissible. *Westfield Ctr., supra,* 86 *N.J.* at 466, 432 *A.2d* 48. Although our Supreme Court recognized that the issuance of a permanent injunction against termination, cancellation or non-renewal would raise constitutional questions of due process, and in the case of franchisor owned real property, taking of property for public use without just compensation, the Court limited that recognition to cases where the franchisor had bona fide reasons and refused, in good faith, to approve of the transfer or renewal. *Id.* at 467, 432 *A.2d* 48. As previously pointed out, VWOA and AOA acted unreasonably in withholding consent to the transfer. The protections afforded under *Westfield Ctr.* would be inapplicable.

 Moreover, while both the federal and state constitutions protect the possession, use, and disposition of property, the Court also recognized that this right is subject to a reasonable exercise of the government's police power. *Id.* at 468, 432 *A.*2d 48. (citing *Shelley v. Kraemer*, 334 *U.S.* 1, 10, 68 *S.Ct.* 836, 841, 92 *L.Ed.* 1161, 1179 (1948); *Jones v. Haridor Realty Corp.*, 37 *N.J.* 384, 391, 181 *A.*2d 481 (1962); and *Hutton Park Gardens v. West Orange Town Council*, 68 *N.J.* 543, 350 *A.*2d 1 (1975)). The requirement that a franchisor act reasonably in withholding its consent to a transfer of the franchise is an appropriate exercise of the government's police power and not an excessive infringement on the franchisor's rights. *Larese, supra,* 767 *F.*2d at 717–18.

 The availability of injunctive relief under section six of the Act is constitutionally permissible.

The order approving Aspen Knolls as the franchise transferee of Coast's Volkswagen and Audi franchises is affirmed. Because this issue was certified as final pursuant to *R.* 4:42–2, the pending claims for termination and rescission are moot and shall, on remand, be dismissed by the trial court.