**In re VAN NESS AUTO PLAZA, INC., a California corporation, d/b/a Auto Plaza Lincoln Mercury, Auto Plaza Porsche and Auto Plaza Ferrari, Debtor.**

Bankruptcy No. 3–89–03450–TC.

United States Bankruptcy Court, N.D. California.

Oct. 26, 1990.

---

**546**

Henry Cohen, Cohen and Jacobson, Burlingame, Cal., for debtor Van Ness Auto Plaza, Inc.

James S. Monroe, Lillick & Charles, San Francisco, Cal., for Porsche Cars of North America, Inc.

Jeffrey Alan Levenberg, Law Offices of Jeffrey Alan Levenberg, San Francisco, Cal., for Ron Greenspan V.W., Inc.

## OPINION

THOMAS E. CARLSON, Bankruptcy Judge.

Debtor, an automobile dealer, moved to assume and assign a Porsche franchise. California state law, applicable via 11 U.S.C. § 365(c)(1), provides that such a franchise may be assigned only with the consent of the manufacturer, but that such consent shall not unreasonably be withheld. The principal question raised in this proceeding is the legal standard upon which the reasonableness of a manufacturer's withholding consent is to be judged. I conclude that withholding consent is reasonable if it is based on factors related to the proposed assignee's performance as a dealer and is supported by substantial objective evidence, but that a court reviewing the manufacturer's decision may not substitute its judgment for that of the manufacturer. Applying this standard, I find that Porsche's refusal to consent to the assignment was reasonable.

I

## GOVERNING LEGAL STANDARD

Debtor is a franchised Porsche dealer. The parties agree that the franchise agreement is an executory contract within the meaning of 11 U.S.C. § 365. Debtor seeks to assume the franchise agreement and to assign it to another dealer. Porsche objects to the proposed assignment on the basis that the proposed assignee would not be a suitable Porsche dealer.

State law restricts Debtor's ability to assign the franchise without Porsche's consent.

It is unlawful and a violation of this code for any manufacturer, manufacturer branch, distributor, or distributor branch licensed under this code to do any of the following:

.    .    .    .    .

(e) To prevent, or attempt to prevent, a dealer from receiving fair and reasonable compensation for the value of the franchised business. *There shall be no transfer or assignment of the dealer's franchise without the consent of the manufacturer or distributor, which consent shall not be unreasonably withheld.*

California Vehicle Code, § 11713.3 (emphasis added).

This state-law restriction is applicable in the present case even though Debtor has filed a bankruptcy petition.

The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment.

11 U.S.C. § 365(c)(1). In a well-reasoned opinion that this court finds persuasive, the First Circuit held that section 365(c)(1) applies to state statutes restricting transfer of automobile dealership franchises. *In re Pioneer Ford Sales, Inc.,* 729 F.2d 27 (1st Cir.1984). The statute at issue in *Pioneer Ford,* like Vehicle Code section 11713.3(e), provided that the franchise could not be assigned without the manufacturer's consent, but that such consent may not be unreasonably withheld. The court in *Pioneer Ford* concluded that the debtor could not assign the franchise if the manufacturer reasonably withheld consent.

The crucial issue in the present case is the standard the court is to apply in determining whether a manufacturer's withholding consent to transfer of a franchise is reasonable under Vehicle Code section 11713.3(e). There are no published decisions interpreting the California statute.

Guidance regarding the factors the manufacturer may properly consider can be found in published decisions from States that have adopted similar statutes. It is clear from those decisions that withholding consent to assignment is reasonable only if it is based on factors closely related to the proposed assignee's likelihood of successful performance under the franchise agreement. Relevant considerations include: (1) whether the proposed dealer has adequate working capital; (2) the extent of prior experience of the proposed dealer; (3) whether the proposed dealer has been profitable in the past; (4) the location of the proposed dealer; (5) the prior sales performance of the proposed dealer; (6) the business acumen of the proposed dealer; (7) the suitability of combining the franchise in question with other franchises at the same location; and (8) whether the proposed dealer provides the manufacturer sufficient information regarding its qualifications. *See Pioneer Ford,* 729 F.2d at 29–31; *Simonds Chevrolet, Inc. v. General Motors Corp.,* 564 F.Supp. 151, 153 (D.Mass.1983).

As explained in Part II, it is clear that Porsche considered appropriate criteria in withholding consent to the proposed assignment of the franchise. The controlling question in this case is the standard of review this court should apply in determining whether Porsche had a sufficient basis under those criteria to withhold consent. Stated differently, the question is the extent to which Porsche must establish that the proposed assignee is actually deficient with respect to the relevant criteria. There is a broad range of standards of review the court could apply. At one extreme, withholding consent could be held to be reasonable if the manufacturer made a good faith determination under the relevant criteria. At the other extreme, the court could review the manufacturer's decision *de novo,*

finding the refusal to consent to be reasonable only if the manufacturer established by a preponderance of the evidence that the proposed assignee was materially deficient with respect to the relevant criteria.

Although none of the decisions regarding assignment of automobile franchises addresses the standard of review to be applied in determining reasonableness, guidance may be found in authorities governing the assignment of leases.[1] The Restatement of Property provides in relevant part: "A reason for refusing consent [to assignment of a lease], in order for it to be reasonable, must be objectively sensible and of some significance and not be based on mere caprice or whim or personal prejudice." Restatement (Second) of Property § 15.2 comment g at 105 (1977). *Mitchell's, Inc. v. Nelms*, 454 S.W.2d 809 (Tex. Civ.App.1970) surveyed numerous decisions concerning the standard of review of refusal to consent to assignment of a lease. The court noted that some courts had held that withholding consent to assignment is unreasonable only if it is arbitrary. *Id.* at 814 (*citing Grossman v. Barney*, 359 S.W.2d 475 (Tex.Civ.App.1962)). In this context, a decision is arbitrary "when it is made without fair, solid and substantial cause or reason ... [and] although a decision is mistaken or wrong, it is not necessarily arbitrary." *Id.* The court next noted that other courts have stated that "the term 'unreasonable' conveys the same idea as irrational, foolish, unwise, absurd, silly, preposterous, senseless, and stupid." *Id.* (*citing Southern Kansas State Lines Co. v. Public Service Commission*, 135 Kan. 657, 11 P.2d 985 (1932); *Wisconsin Telephone Co. v. Public Service Commission*, 232 Wis. 274, 287 N.W. 122, 131 (1939)). Finally, the court noted that yet another court held that "the determination of what is 'unreasonable' is one where, under the evidence presented, there is no room for difference of opinion among reasonable minds." *Id.* (*citing Thurman v. Meridian Mutual Ins. Co.*, 345 S.W.2d 635, 639 (Ky. 1961)).

Although the standards set forth in the authorities quoted above differ from one another to some extent, they are alike in that they focus not on whether the lessor's decision to withhold consent is correct, but on whether there is a substantial basis for the lessor's decision under relevant criteria. None of the authorities suggest that a court is to review the lessor's refusal to consent *de novo* and find that decision unreasonable because the court would have decided differently. The quotation from the *Grossman* decision expressly states that withholding consent may be reasonable even if the decision is wrong. The quotation from the *Thurman* decision states that withholding consent is reasonable if, on the facts of the case, reasonable minds could differ as to whether consent should be withheld.

If a lessor's decision to withhold consent is not to be subject to *de novo* review, the case is even stronger for according some deference to an automobile manufacturer's decision to withhold consent to the transfer of a franchise. First, it is more difficult to determine whether an automobile dealer will be a suitable franchisee than it is to determine whether a lessee will perform under a lease. A lessee's major contractual duty is to pay rent timely. A franchisee's duties are much more complex. Second, a franchise agreement involves the manufacturer and dealer in a much closer business relationship than commonly exists between a lessor and lessee. Thus, the courts must be somewhat cautious in re-

---

1. Courts in many states have adopted the rule that a lessor may not unreasonably withhold consent to the assignment of a lease. *See generally,* Restatement (Second) of Property § 15.2 (1977). As with the decisions regarding assignment of automobile franchises, the published decisions regarding leases hold that withholding consent to assignment is reasonable only if supported by objective factors related to the proposed lessee's ability to perform under the lease. Relevant factors include the proposed assignee's financial resources, and the proposed use of the property. *See Kendall v. Ernest Pestana, Inc.,* 40 Cal.3d 488, 500–01, 220 Cal.Rptr. 818, 709 P.2d 837 (1985). Because assignment of automobile franchises and leases are governed by similar concepts, the standard for reviewing the reasonableness of withholding consent to assignment should be similar in both instances.

quiring the manufacturer to enter into such a relationship involuntarily.

■ At the same time, the language of Vehicle Code section 11713.3(e) indicates that the standard of review must be more exacting than whether the manufacturer acted in good faith after considering appropriate criteria. This is so for two reasons. First, if the legislature had intended the standard to be good faith, it undoubtedly would have so specified. Several federal and state statutes governing franchise agreements require that a franchisor act in good faith in all dealings with its franchisees. *See e.g.*, 15 U.S.C. § 1221 (Automobile Dealer Franchise Act); *R.L.M. Dist. Co. v. W.A. Taylor, Inc.*, 723 F.Supp 421, 428 (D.Ariz.1988) (re: Ariz.Rev.Stat. § 44–1565(3)). If the California legislature intended to create a good faith standard, it would simply have provided that withholding consent to assignment must be made in good faith. Instead, it provided that the decision must be reasonable. Second, the first sentence of the section 11713.3(e) recognizes that a dealer may not be able to recover the reasonable value of its investment in the dealership business unless it is able to assign the franchise. It provides that it is unlawful for any manufacturer "[t]o prevent, or attempt to prevent, a dealer from receiving fair and reasonable compensation for the value of the franchised business." The second sentence of the section states that the manufacturer's consent to assignment may not unreasonably be withheld. The statute attaches substantial importance to enabling the dealer to recover its investment. This concern is simply too weighty to be overcome by a manufacturer's refusal to consent to assignment supported only by the manufacturer's subjective good faith.

Because the manufacturer may not act arbitrarily, and because the manufacturer is in possession of all information regarding its reasons for refusing to consent to assignment, the burden of presenting plausible reasons for the refusal to consent must be on the manufacturer. The ultimate burden of persuasion, however, is on the dealer to establish that the manufactur-

er's refusal to consent is unreasonable. *Cf.* Restatement (Second) of Property § 15.2 comment g at 105 (1977) (leases); *Reuling v. Sergeant*, 93 Cal.App.2d 241, 242, 208 P.2d 1046 (1949) (leases).

■ Upon consideration of the authorities cited above, I conclude that withholding consent to assignment of an automobile franchise is reasonable under California Vehicle Code section 11713.3(e) if it is supported by substantial evidence showing that the proposed assignee is materially deficient with respect to one or more appropriate, performance-related criteria. This test is more exacting than whether the manufacturer subjectively made the decision in good faith after considering appropriate criteria. It is an objective test that requires that the decision be supported by evidence. The test is less exacting than one which requires that the manufacturer demonstrate by a preponderance of the evidence that the proposed assignee is deficient. Although the initial burden of explaining the basis for the decision is on the manufacturer, the ultimate burden of persuasion is on the assigning dealer to demonstrate that the manufacturer's refusal to consent is unreasonable.

## II

### APPLICATION OF LEGAL STANDARD TO FACTS OF THIS CASE

■ The dealer to whom Debtor proposed to assign the Porsche franchise is Ron Greenspan VW, Inc. (Greenspan). Greenspan completed a Porsche franchise application and supplied additional information to Porsche during May–July 1990. In a July 18, 1990 letter, Porsche advised Greenspan that it declined to approve Greenspan's application.

Porsche listed the following reasons for not consenting to transfer of the franchise to Greenspan: (1) Greenspan's location was unacceptable; (2) consumer satisfaction surveys showed that Greenspan ranked well below average; (3) lack of working capital; (4) Greenspan's dealership is integrated with a "Flashlube" facility; and (5) Greenspan failed to establish that he could

complete a real estate exchange necessary to finance his dealer operations. At trial, Porsche asserted two additional reasons for withholding consent to assignment of the franchise to Greenspan: (1) that Greenspan's plan to operate Lincoln–Mercury, Volkswagen, and Lotus dealerships in the same facility with the Porsche dealership would be detrimental to Porsche; and (2) that Greenspan's facility had too few service stalls.

The court took several days of testimony regarding Greenspan's qualifications to be a Porsche dealer. Upon consideration of that testimony and the documentary evidence introduced, the court makes the following findings regarding the reasons asserted by Porsche for withholding consent to assignment of the franchise.

(1) *Criteria employed by Porsche.* All of the reasons stated by Porsche for withholding consent to assignment of the franchise involve criteria closely related to Greenspan's ability to perform successfully under the franchise agreement. *See* Part I, *supra.* Porsche acted in good faith in making its decision. The reasons stated by Porsche for withholding consent were not pretexts to mask other reasons for withholding consent.

(2) *Location.* Porsche's objection to Greenspan's dealership location is justified and supported by substantial evidence. Debtor's Porsche dealership in San Francisco has been operated on Van Ness Avenue in what is known as "auto row." Greenspan's location, although it is at the foot of Van Ness Avenue on Howard Street, is not on auto row and is in an entirely different neighborhood. The Howard Street neighborhood is generally recognized as less affluent than the auto row area, and has a higher proportion of warehouses and manufacturing businesses than auto row. There are more European and Japanese "high-end" dealerships on auto row than in the Howard Street neighborhood. The Greenspan location is as favorable as auto row in terms of general access, and the building housing the Greenspan dealership is modern and attractive.

Although it would certainly not be unreasonable for Porsche to choose to relocate to the Greenspan location, it is also reasonable for Porsche not to want to leave auto row while many other "high-end" dealers remain there. Relocation to Howard Street is not a choice that Porsche should be forced to make by requiring it to consent to transfer of the franchise to Greenspan.

(3) *Consumer Satisfaction Index.* Automobile manufacturers survey purchasers to determine the quality of service provided by individual dealerships. The resulting data is known as the Consumer Satisfaction Index (CSI). Over the past few years, manufacturers' marketing plans have attached increasing importance to maintaining customer satisfaction with the service provided by dealers. Greenspan ranked well below the national, western, and local average in CSI ratings. Examination of the evidence reveals that CSI ratings are generally lower in the western United States than in the East; are generally lower in California than in the rest of the West; and are lower in central cities than in suburban and rural locations. If Greenspan is compared solely to center-city dealerships in Oakland, San Francisco, and San Jose, its CSI ratings are about average. The evidence established that quality of service is especially important to purchasers of expensive cars, such as Porsche.

The CSI data provide substantial evidence supporting Porsche's refusal to consent to assignment of the franchise to Greenspan. It is not beyond the realm of reasonable decisions for a manufacturer of luxury cars to refuse to accept a dealer with CSI rankings that are average at best and possibly well-below average. That is especially so in the present case, because Porsche initiated proceedings more than a year ago to terminate Debtor's franchise because of alleged breaches of the franchise agreement, Debtor's bankruptcy has been pending for more than a year, and Debtor has not been a fully functioning dealer during the bankruptcy case. San Francisco is an important market for Porsche. To rehabilitate Porsche's reputation in the San Francisco market, it is im-

portant that its new San Francisco dealer provide high-quality service.

(4) *Other dealerships and Flashlube.* Porsche objected to Greenspan's plan to maintain Lincoln–Mercury, Volkswagen, and Lotus dealerships on the same premises with the Porsche dealership. Porsche submitted no persuasive evidence that being connected with these franchises would be detrimental to it. Porsche is connected with Volkswagen in many dealerships throughout the country. Neither Lincoln–Mercury nor Lotus are cars of such an inferior class and quality that Porsche's image is tarnished by being connected with them. Nor does the court perceive any possible harm to Porsche from Greenspan's maintaining a Flashlube facility next door to the dealership.

(5) *Working Capital and profitability.* Greenspan was profitable in every year except 1989. Its 1989 losses of $900,000 are the result of the fact that debt service on its facility is $100,000 per month, and that 1989 was a very poor year for automobile dealers generally. Greenspan has negotiated a transaction which, if completed, would reverse its losses and ensure it substantial working capital. Ford has agreed to exchange a building it owns for Greenspan's facility in a tax-free exchange. Ford will lease back the Greenspan facility for $30,000 per month.[2] This $70,000 monthly reduction in rent will by itself reverse almost all of the loss experienced the year before. Greenspan will sell the building acquired from Ford and should net more than $1,000,000 cash from the sale, which will be invested in the dealership. Although the transaction has not yet closed, Greenspan offered to make assignment of the Porsche franchise contingent on closing of all aspects of the transaction. Under these circumstances, Porsche was not reasonable in withholding consent to assignment on the basis of concerns regarding working capital and profitability.

(6) *Other factors.* Porsche's contentions that Ron Greenspan made intentional misstatements to the court and in the franchise application, and that the franchise

application was not complete are not supported by substantial evidence.

CONCLUSION

I conclude that Porsche's refusal to consent to assignment of the franchise was reasonable because it was based upon relevant criteria supported by substantial evidence. Porsche may not be required to accept Greenspan as a franchisee.

---

**2.** This below-market rent is a subsidy by Ford to Greenspan as a Lincoln–Mercury dealer.