BACHARACH, J.,
dissenting.
This case involves a proposal to transfer control of three dealerships that sold Land Rover vehicles. The dealerships were owned by a company called “Pioneer Cen-tres Holding Company.” Pioneer was owned by Mr. Matthew Brewer.
*1344 [[Image here]]
Mr. Brewer wanted to sell his entire interest in Pioneer to its employee stock ownership plan.
[[Image here]]
The sale was to be negotiated with an independent fiduciary for the plan (Ale-ras), but the transfer of the dealerships was conditioned on approval of the company that manufactured the vehicles (Land Rover).
Aleras and Mr. Brewer reached an impasse, so the proposed transfer was never submitted to Land Rover for approval. The plan’s trustees and the plan itself later sued Aleras for damages, alleging that Al-eras had breached fiduciary duties by impeding the sale.
The district court granted summary judgment to Aleras, holding that the trustees and the plan had not established causation between the alleged breach and the inability to complete the sale. The court reasoned that even if Aleras and Mr. Brewer had reached an agreement, the sale could have proceeded only if Land Rover would have approved the transfer. In the court’s view, “there [was] insufficient admissible evidence that such approval would have occurred.” Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Trust v. Alerus Fin., N.A., No. 12-cv-02547-RM-MEH, 2015 WL 2065923, at *8 (D. Colo. May 1, 2015) (unpublished). The majority agrees with the district court, but I do not. As a result, I respectfully dissent.
For the sake of argument, I assume that Land Rover did not want to approve the transfer. But this assumption is not dispos- *1345 itive. In light of the testimony and our presumption that individuals follow the law, a reasonable fact-finder could conclude that disapproval would have been objectively unreasonable. With such a conclusion, the fact-finder could also reasonably infer that
• Land Rover would have acquiesced in the transfer or
• a court would ultimately have required approval of the transfer.
Because the sole basis for the district court’s decision is flawed, I would reverse and remand for further proceedings.[1]
I. Standard of Review
The district court concluded that Alerus was entitled to summary judgment. This conclusion is subject to de novo review. Koch v. City of Del City, 660 F.3d 1228, 1237 (10th Cir. 2011). In applying de novo review, we consider the evidence and reasonable inferences in the light most favorable to the trustees and the plan. Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014). Summary judgment would have been appropriate only if Alerus had shown that (1) there were no genuine issues of material fact and (2) Alerus was entitled to judgment as a matter of law. Koch, 660 F.3d at 1238.
II. The Objective-Reasonableness Requirement
Pioneer owned one Land Rover dealership in California and two Land Rover dealerships in Colorado. The parties agree that the laws of both California and Colorado would preclude Land Rover from unreasonably withholding approval regarding the transfer. See Cal. Veh. Code § 11713.3(d)(1) (West 2010) (stating that a manufacturer’s “consent [to a transfer] shall not be unreasonably withheld”); id. § 11713.3(e) (same); Colo. Rev. Stat. § 12-6-120(1)(i)(III) (2010) (“It shall be unlawful ... for any manufacturer ... [t]o refuse to approve, unreasonably, the sale or transfer of the ownership of a dealership.... ”).[2]
1. California’s Objective-Reasonableness Requirement
California’s reasonableness requirement was fleshed out in In re Van Ness Auto Plaza, Inc., 120 B.R. 545 (Bankr. N.D. Cal. 1990). This opinion has been followed by many courts, including the Ninth Circuit Court of Appeals. See, e.g., In re R.B.B., Inc., 211 F.3d 475, 477-80 (9th Cir. 2000); In re Claremont Acquisition Corp., 186 B.R. 977 984-89 (C.D. Cal. 1995), aff'd, 113 F.3d 1029 (9th Cir. 1997); Fladeboe v. Am. Isuzu Motors Inc., 150 Cal.App.4th 42, 58 Cal.Rptr.3d 225, 240-42 (2007).
In Van Ness, the court discussed the objective test governing the reasonableness of a manufacturer’s withholding of approval:
[Wlithholding consent to assignment of an automobile franchise is reasonable under ■ California Vehicle Code section 11713.3(e) if it is supported by substantial evidence showing that the proposed *1346 assignee is materially deficient with respect to one or more appropriate, performance-related criteria. This test is more exacting than whether the manufacturer subjectively made the decision in good faith after considering appropriate criteria. It is an objective test that requires that the decision be supported by evidence. The test is less exacting than one which requires that the manufacturer demonstrate by a preponderance of the evidence that the proposed assignee is deficient.
120 B.R. at 549; see also id. at 547 (“[W]ithholding consent to assignment is reasonable only if it is based on factors closely related to the proposed assignee’s likelihood of successful performance under the franchise agreement.”).
The Van Ness court identified eight factors that manufacturers may consider in assessing objective reasonableness:
(1) whether the proposed dealer has adequate working capital; (2) the extent of prior experience of the proposed dealer; (3) whether the proposed dealer has been profitable in the past; (4) the location of the proposed dealer; (5) the prior sales performance of the proposed dealer; (6) the business acumen of the proposed dealer; (7) the suitability of combining the franchise in question with other franchises at the same location; and (8) whether the proposed dealer provides the manufacturer sufficient information regarding [the proposed dealer’s] qualifications.
Id. at 547. The parties agree that these factors would bear on the reasonableness of Land Rover’s decision to withhold approval.
In Van Ness, the court discussed not only these factors but also the proposed dealer’s customer-satisfaction rankings. See id. at 550 (“It is not beyond the realm of reasonable decisions for a manufacturer of luxury cars to refuse to accept a dealer with [customer-satisfaction] rankings that are average at best and possibly well-below average.”). It is unclear whether the court considered a proposed dealer’s customer-satisfaction rankings as an independent factor or part of another factor. See id. But either way, Van Ness indicates that manufacturers may consider a proposed dealer’s customer-satisfaction rankings. See id. Thus, for the sake of argument, I assume that manufacturers may consider a proposed dealer’s customer-satisfaction rankings as an independent ninth factor.
One state court in California has held that there is another factor that manufacturers may consider: the proposed “dealer’s honesty and good faith in its relations with the manufacturer.” Fladeboe v. Am. Isuzu Motors Inc., 150 Cal.App.4th 42, 58 Cal.Rptr.3d 225, 241 (2007). For the sake of argument, I also assume a need to consider this factor.
2. Colorado’s Objective-Reasonableness Requirement
Courts have not fleshed out Colorado’s reasonableness requirement as fully as California’s reasonableness requirement. But one federal district court has indicated that Colorado’s reasonableness requirement involves “an objective standard.” Arapahoe Motors, Inc. v. Gen. Motors Corp., No. 99 N 1985, 2001 WL 36400171, at *9 n.9 (D. Colo. Mar. 28, 2001) (unpublished). I agree for two reasons.
First, an objective-reasonableness requirement would better advance an underlying purpose of Colo. Rev. Stat. § 12-6-120(1): to protect dealers from manufacturers’ weighty bargaining power. See S.J. Glauser DCJB, L.L.C. v. Porsche Cars N. Am., Inc., No. 05-cv-01493-PSF-CBS, 2006 WL 1816458, at *5 (D. Colo. June 30, 2006) (unpublished); Empire Datsun, Inc., v. *1347 Nissan Motor Corp. in U.S.A., No. 82-M-1027, 1984 U.S. DIST. LEXIS 18092, at *8 (D. Colo. Mar. 29, 1984) (unpublished).
Second, courts have generally treated other jurisdictions’ reasonableness requirements as objective rather than subjective. See, e.g., Paccar Inc. v. Elliot Wilson Capitol Trucks LLC, 923 F.Supp.2d 745, 761 (D. Md. 2013) (“[T]he Court finds that [the statute at issue] requires that the rejection of a prospective transfer be grounded on a reasonable, business-related concern regarding the [proposed dealer’s] ability to effectively operate the [dealership]. An unfounded ... refusal is violative of the statute.”); Van Ness, 120 B.R. at 549 (“This test [of reasonableness] is.... an objective test that requires that the [manufacturer’s] decision be supported by evidence.”); VW Credit, Inc. v. Coast Auto. Grp., 346 N.J.Super. 326, 787 A.2d 951, 958 (Ct. App. Div. 2002) (“The standard of review to determine the reasonableness of withholding consent to transfer of a [dealership] is an objective test that requires that the decision be supported by substantial evidence showing that the proposed [dealer] is materially deficient.” (citing Van Ness, 120 B.R. at 549)).
For these two reasons, I would conclude that Colorado’s reasonableness requirement is objective. Thus, I would conclude that under Colorado law, withholding approval of a transfer “is reasonable only if it is based on factors closely related to the proposed [dealer’s] likelihood of successful performance under the franchise agreement.” Van Ness, 120 B.R. at 547.
3. Three More Objective Factors that Land Rover Considers in Determining Whether to Approve a Transfer
Land Rover considers a variety of objective factors when determining whether to approve a transfer. With three exceptions, these objective factors are included in the ten objective factors discussed above. See Part 11(1), above. The three exceptions are
1. the purchaser’s overall financial strength,
2. the transfer’s likely effect on financial performance, and
3. the management’s commitment to the dealership.
For the sake of argument, I assume that these three objective factors may be considered under the objective-reasonableness requirements of California and Colorado. With these three factors, there are thirteen independent objective factors.
But consideration of objective reasonableness would not encompass Land Rover’s actual resistance to the transfer, even if that resistance was in good faith, because subjective factors generally do not belong in an objective test. See, e.g., United States v. Torres-Castro, 470 F.3d 992, 1000 (10th Cir. 2006) (“Even if the officers were actually motivated to question [the defendant] about the gun because they discovered shells during the protective sweep, their subjective motivations are irrelevant because the Fourth Amendment turns on the objective reasonableness of the circumstances.”); EEOC v. PVNF, L.L.C., 487 F.3d 790, 805 (10th Cir. 2007) (“In evaluating whether the employee’s working conditions would cause [a reasonable person in the employee’s position to feel compelled to resign], ‘we apply an objective test under which neither the employee’s subjective views of the situation, nor her employer’s subjective intent ... are relevant.’ ” (quoting Tran v. Trs. of State Colls, in Colo., 355 F.3d 1263, 1270 (10th Cir. 2004) (alteration in original))); People v. Cowart, 244 P.3d 1199, 1203 (Colo. 2010) (en banc) (holding that “[t]he court may not ... consider subjective factors in making a custody determination” since “ ‘the custody test is objective in *1348 nature’ ” (quoting People v. Hankins, 201 P.3d 1215, 1219 (Colo. 2009) (en banc))).
4. Alerus’s Argument Regarding the Suitability of an Employee Stock Ownership Plan as a Dealer
Alerus apparently argues that Land Rover could consider an additional factor: whether the proposed dealer is owned by its employees through an employee stock ownership plan. Alerus’s argument entails four steps:
1. Under a company’s employee stock ownership plan, ownership lies with the employees.
2. Some employees might be unsuitable owners.
3. Making these employees owners could negatively affect the company’s performance.
4. Therefore, a manufacturer may reasonably disfavor proposed dealers that are controlled by employee stock ownership plans.
This argument would not support an award of summary judgment to Alerus.
Under the objective-reasonableness tests in California and Colorado, withholding approval of a transfer is “reasonable only if it is based on factors closely related to the proposed [dealer’s] likelihood of successful performance under the franchise agreement.” Van Ness, 120 B.R. at 547; see Part II(l)-(2), above. The resulting question here is whether employee ownership negatively affects the dealer’s likelihood of successful performance.
To answer this question, we examine the summary-judgment evidence. This evidence included the report of Dr. Susan Mangiero, who attested to the advantages of ownership by employee stock ownership plans. Alerus did not counter with any evidence suggesting that employee ownership negatively affects performance. In light of Dr. Mangiero’s report and the absence of any conflicting evidence, the district court could not award summary judgment to Alerus based on Land Rover’s reluctance to approve the transfer to an employee stock ownership plan.[3]
5. The Factual Nature of Reasonableness
As Alerus concedes, reasonableness entails a question of fact. This concession accords with California law, which expressly provides that reasonableness is a question of fact. See Cal. Veh. Code § 11713.3(d)(3) (West 2010) (“[W]hether the withholding of consent was unreasonable is a question of fact requiring consideration of all the existing circumstances.”).
Alerus nevertheless argues that this issue is routinely resolved on summary judgment. In support of this argument, Alerus cites two non-precedential opinions. These opinions do not support summary judgment here.
The first is DeSantis v. General Motors Corp., an unpublished, one-page memorandum opinion from the Ninth Circuit Court of Appeals. 279 Fed.Appx. 435 (9th Cir. 2008). There the plaintiffs applied to a manufacturer to obtain ownership of a car dealership. The manufacturer rejected the application. On summary judgment, the district court ruled in favor of the manufacturer. The Ninth Circuit affirmed, holding that the manufacturer’s rejection was objectively reasonable because
*1349 there was substantial evidence of poor customer satisfaction scores during the time period when [one plaintiff] took over as general manager of [the dealership]. There was also substantial evidence of inadequate capitalization because, it is undisputed that when the application was turned down, [this plaintiff] did not meet the requirement that he personally invest unencumbered funds equal to 15 percent of the total dealership capital.
Id. at 436.
The second is Pacesetter Motors, Inc. v. Nissan Motor Corp. in U.S.A., a district court opinion by the Western District of New York. 913 F.Supp. 174 (W.D.N.Y. 1996). There a manufacturer (Nissan) withheld approval regarding the transfer of a Nissan dealership. Nissan’s stated reason for withholding approval was the proximity of the proposed dealer to an existing Nissan dealership. Id. at 177, 179. The transferors sued, asserting that the stated reason had constituted a mere pretext. According to the transferors, Nissan actually withheld approval because of anger with the transferors. Id. at 176-80. On summary judgment, the district court held that withholding approval was reasonable because the transferors had conceded that being too close to another Nissan dealership impeded sales. Id. at 179. The court added that the transferors’ pretext argument was not persuasive for three reasons:
1. Even after “ample discovery,” there was no evidence supporting this argument.
2. If Nissan had a strained relationship with the transferors, “it would make more sense that Nissan would be eager to sever the relationship with them and to deal with” the proposed dealer.
3. “[I]t would make no economic sense for Nissan to refuse to approve a [transfer] that would be in its best financial interest, due to some personal ‘frustration’ with” the transfer-ors.
Id. at 179-80.
These two non-precedential opinions do not support summary judgment here. They suggest only that reasonableness may be. decided on summary judgment in two extreme circumstances:
1. A dispositive factual issue is undisputed.
2. The non-moving party takes a factual position that is illogical or not reasonably supported by any evidence.
These sorts of extreme circumstances are not present here. Thus, the two non-prece-dential opinions do not support summary judgment on the issue of objective reasonableness.
III. A genuine issue of material fact exists on whether Land Rover would have exercised a right of first refusal.
Alerus implies that Land Rover could have exercised a right of first refusal, purchasing Pioneer’s dealerships even if withholding approval for the transfer would have been objectively unreasonable. The trustees and the plan seem to question whether Land Rover would have been able to exercise this right.
For the sake of argument, I assume that Land Rover could have exercised the right of first refusal even if withholding approval for the transfer would have been objectively unreasonable. Even with this assumption, a reasonable fact-finder would have had three reasons to doubt whether Land Rover would have exercised the right of first refusal.
*1350 First, the summary-judgment evidence indicates that Land Rover, like other manufacturers, exercised this right only rarely.
Second, Land Rover could exercise the right of first refusal only by buying all of Pioneer’s dealerships, not simply the Land Rover dealerships. A fact-finder could doubt whether Land Rover would have been willing to buy dealerships that sold competing brands of vehicles.
Third, Land Rover would ultimately have had to divest itself of the dealerships. See Cal. Veh. Code § 11713.3(o)(2)(A) (West 2010); Colo. Rev. Stat. § 12-6-120.5(2)(a)(I) (2010).
For these three reasons, a fact-finder could reasonably conclude that Land Rover probably would not have exercised the right of first refusal.
IV. A Land Rover executive testified that Land Rover follows the objective-reasonableness requirements, and our court must presume that Land Rover would have followed these requirements.
If Land Rover had declined to exercise the right of first refusal, Land Rover would have had to decide whether to approve the transfer. A reasonable fact-finder could conclude that Land Rover would ultimately have based this decision on what was objectively reasonable.
A Land Rover executive testified that Land Rover follows the statutory requirements of objective reasonableness. Even without this testimony, our court would need to presume Land Rover’s compliance with the legal requirements of California and Colorado. See, e.g., Royal Coll. Shop, Inc. v. N. Ins. Co. of N.Y., 895 F.2d 670, 682-83 (10th Cir. 1990) (discussing the presumption that a person obeys the law); NLRB v. Shawnee Indus., Inc., 333 F.2d 221, 225 (10th Cir. 1964) (“It is presumed that a person obeys the law and discharges the obligations imposed on him by law.”).
In light of these legal requirements, Land Rover’s actual concerns about the transfer are not dispositive; what ultimately matters is whether it would have been objectively reasonable for Land Rover to withhold approval. If withholding approval would have been objectively unreasonable, a fact-finder could justifiably predict that Land Rover would have approved the transfer.
The reasonableness of a refusal is a factual issue. See Part 11(5), above. In extreme circumstances where dispositive facts are undisputed or indisputable, this issue may be decided on summary judgment. See id. But these kinds of extreme circumstances are not present here.
Viewing the evidence and reasonable inferences favorably to the trustees and the plan, as required,[4] a fact-finder could justifiably conclude that (1) withholding approval would have been objectively unreasonable and (2) Land Rover would have acquiesced in the transfer because doing otherwise would have been objectively unreasonable. The justifiable nature of these conclusions required denial of Alerus’s summary-judgment motion.
V. If withholding approval would have been objectively unreasonable, the fact-finder could justifiably infer that Land Rover would have been forced to approve the transfer through an injunction.
The trustees and the plan contend that if Land Rover had withheld approval, Pioneer, the trustees, and the plan would have sued for an injunction to force Land Rover to approve the transfer. Aleras does not *1351 dispute this point or argue that injunctive relief would have been unavailable.
Nonetheless, the majority concludes that the trustees and the plan failed to present this contention in district court. For the sake of argument, let’s assume that the majority is correct; if it is, the omission in district court would not matter because Aleras has never questioned preservation of this contention.
Aleras elsewhere pointed out where it thought the trustees and the plan were making a new argument on appeal. Appel-lee’s Resp. Br. at 29, 38, 55; Oral Arg. at 24:24-24:46. And, Aleras specifically argued that the trustees and the plan had forfeited one of their appeal points (shifting the burden of proof) by failing to present that point in district court. Appellee’s Resp. Br. at 29. But Aleras does not suggest that the trustees or the plan failed to argue in district court that they would have sued Land Rover to force its approval of the transfer.
Instead, Aleras responds on the merits, acknowledging that the trustees and the plan could prevail if a suit would probably have compelled Land Rover to approve the transfer. See id. at 53. Thus, Aleras has forfeited any contention that it might have had on preservation of the issue. See Cook v. Rockwell Int’l Corp., 618 F.3d 1127, 1138-39 (10th Cir. 2010) (concluding that the plaintiffs forfeited any argument that they might have had on nonpreservation of an issue).[5] In these circumstances, I would address the issue on the merits, just as Aleras has done.
On the merits, I regard the evidence as sufficient to create a genuine issue of material fact. Land Rover might not have wanted to approve the transfer. But if Land Rover had refused, the trustees and the plan could have sued. They would likely have prevailed if the fact-finder regarded Land Rover’s refusal as objectively unreasonable.
The majority appears to misunderstand my view on the relevance of a potential suit against Land Rover. For example, the majority suggests that I believe that Pioneer has a valid claim against Land Rover under state law. Maj. Op. at 1340-41. I don’t think so, for Pioneer certainly doesn’t have a valid claim against Land Rover; Aleras never agreed to the purchase on behalf of the plan, so Land Rover never had to decide whether to approve the transfer. Thus, Land Rover is not to blame for the deal collapsing.
The reasonableness of Land Rover’s possible refusal is pertinent only because of what Aleras has argued. Aleras argues that if it had breached a fiduciary duty, this breach would not have caused any damage because Land Rover would have refused to approve the transfer. In assessing Alerus’s argument, this court must consider whether the trustees and the plan could have obtained a court decree forcing Land Rover to approve the transfer.
In addition, the majority contends that the outcome of a suit against Land Rover *1352 would not affect whether Aleras had prevented the sale from taking place. But according to the trustees and the plan, the transaction fell apart because of Alerus’s breach of fiduciary duty. Absent that breach, according to the trustees and the plan, Land Rover would ultimately have approved the transfer (either voluntarily or through an injunction).
Viewing the evidence in the light most favorable to the trustees and the plan, a fact-finder could justifiably conclude that Land Rover would probably have approved the transfer. If Land Rover would have done so, Aleras’s alleged breach would indeed have been the cause of the plaintiffs’ damages.
VI. Viewing the evidence favorably to the trustees and the plan, the fact-finder could justifiably infer that disapproval of the transfer would have been objectively unreasonable.
As discussed above, thirteen factors bear on the objective reasonableness of Land Rover’s decision whether to approve the transfer. See Part II(l)-(3), above. Applying the thirteen factors, the fact-finder could justifiably conclude that withholding approval would have been objectively unreasonable.
1. Whether the Proposed Dealer Has Adequate Working Capital
Under Van Ness, the first objective factor is whether the proposed dealer has adequate working capital. 120 B.R. at 547. This factor could reasonably support approval.
It is undisputed that during the negotiations with Aleras, Pioneer’s working capital exceeded Land Rover’s guidelines by over 200 percent. Aleras does not allege that this working capital would somehow disappear when Pioneer became employee-owned. Thus, a reasonable fact-finder could conclude that the plan had ample working capital.
2. The Extent of the Proposed Dealer’s Experience
The second objective factor is the extent of the proposed dealer’s experience. Van Ness, 120 B.R. at 547. It is undisputed that
• Pioneer’s senior management was experienced,
• senior management planned to remain with Pioneer after the sale, and
• Pioneer’s other employees were generally experienced.
Based on these facts, one could justifiably regard Pioneer’s senior management and other employees as highly experienced. Thus, the fact-finder could justifiably conclude that the proposed dealer (the plan) had substantial experience.
Aside from Mr. Brewer, Pioneer’s senior management consisted of eight employees. These employees had over 115 years of combined experience with Pioneer. Most had been with Pioneer since 1992, when Pioneer opened Colorado’s first standalone Land Rover dealership. Some employees had been with Pioneer even longer. During their service, Pioneer grew into a successful, multimillion-dollar enterprise.
Members of senior management expressed their intentions to remain with Pioneer after the sale and would have entered into long-term employment contracts. And at least some senior managers planned to enter into long-term employment contracts with non-compete provisions.
Many of Pioneer’s other employees were also experienced. In 2010, the average employee had been with Pioneer for 5.35 years. This average included some employees who had been hired in 2008.
*1353 A reasonable fact-finder could regard the plan’s personnel as highly experienced in operating the dealerships.
3. Whether the Proposed Dealer Has Been Profitable in the Past
The third objective factor is whether the proposed dealer has been profitable in the past. Van Ness, 120 B.R. at 547. On this factor, a reasonable fact-finder could conclude that Pioneer had historically been profitable. After Pioneer became employee-owned, the same management team and other employees would have remained with Pioneer. Thus, a reasonable fact-finder could conclude that this factor would have supported approval.
Aleras apparently suggests that in 2009 some of Pioneer’s dealerships were unprofitable. But this alleged fact is disputed by other evidence. At summary judgment, the district court had to view the evidence favorably to the trustees and the plan. See Part I, above. With that viewpoint, a reasonable fact-finder could justifiably regard Pioneer as profitable in 2009.
4. The Location of the Proposed Dealer
The fourth objective factor is the location of the proposed dealer. Van Ness, 120 B.R. at 547. The trustees and the plan contend that Pioneer’s dealerships had prime locations. Aleras does not disagree with this contention, and the dealership locations would not have changed with Pioneer’s transition to employee ownership. As a result, this factor weighs against summary judgment for Aleras.
5. The Proposed Dealer’s Prior Sales Performance
The fifth objective factor is the proposed dealer’s prior sales performance. Van Ness, 120 B.R. at 547. As mentioned above, the trustees and the plan presented evidence indicating that Pioneer’s dealerships had been profitable. See Part VI(3), above. This evidence would allow a reasonable fact-finder to conclude that Pioneer’s past sales had been strong. After Pioneer became employee-owned, the same senior managers and employees would continue to work for Pioneer. Therefore, a reasonable fact-finder could conclude that past sales performance would have supported approval.
Aleras points to a brief period when sales at Pioneer’s Land Rover dealerships dipped below the national average. The trustees and the plan present evidence attributing the dip largely to fire damage at one of the dealerships.
A reasonable fact-finder could regard the temporary sales dip as immaterial, for Pioneer was only marginally below the national average and only for a short time. By the time that Land Rover would have made its approval decision, sales had rebounded.
In light of the historically strong sales, the fact-finder could reasonably weigh this factor against an award of summary judgment to Aleras.
6.The Proposed Dealer’s Business Acumen
The sixth objective factor is the proposed dealer’s business acumen. Van Ness, 120 B.R. at 547. The trustees and the plan presented evidence allowing the fact-finder to conclude that Pioneer’s senior management had sound business acumen. These senior managers planned to remain with Pioneer after it became employee-owned. Therefore, a reasonable fact-finder could conclude that the plan had sound business acumen.
According to Aleras, Land Rover could reasonably question the plan’s business acumen because no one could guarantee whether or how long these senior managers would remain with Pioneer. The fact- *1354 finder could reasonably downplay this concern, for the senior managers planned to enter into long-term employment contracts, some with non-compete provisions.
Alerus also appears to question the business acumen of companies owned by an employee stock ownership plan. Essentially, Alerus suggests that Land Rover could discriminate against these companies, for some employees may be unsuited to ownership. But some of the evidence indicates that employee-owned companies outperform their competitors. See Part 11(4), above. Thus, the fact-finder could reasonably question why Land Rover would doubt the business acumen of dealers controlled by employee stock ownership plans.
The fact-finder could reasonably conclude that the proposed dealer had sound business acumen. Thus, this factor cuts against summary judgment to Alerus.
7. The Suitability of Combining the Franchise in Question with Other Franchises at the Same Location
The seventh factor is the suitability of combining the franchise in question with other franchises at the same location. Van Ness, 120 B.R. at 547. This factor is pertinent here because Pioneer had Porsche and Audi dealerships at the same location as one Land Rover dealership. According to the trustees and the plan, these other dealerships complemented the Land Rover dealership. Alerus does not dispute this point, and the arrangement would not have changed with Pioneer’s transition to employee ownership. As a result, this factor could reasonably support approval of the transfer.
8. Whether the Proposed Dealer Provided the Manufacturer with Sufficient Information Regarding Qualifications
The eighth factor is whether the proposed dealer provided the manufacturer with sufficient information regarding qualifications. Van Ness, 120 B.R. at 547. The parties do not make any arguments about this factor.
The record allows a reasonable inference that Land Rover had extensive information about Pioneer. Consequently, this factor weighs against summary judgment for Al-erus.
9. The Proposed Dealer’s Customer-Satisfaction Rankings
The Van Ness court appeared to recognize a ninth factor that manufacturers may consider: the proposed dealer’s customer-satisfaction rankings. See 120 B.R. at 550. Based on the summary-judgment evidence, a reasonable fact-finder could conclude that Pioneer’s customer-satisfaction rankings were above average. Nothing in the record suggests that customer satisfaction would drop with Pioneer’s transition to employee ownership.
Alerus points to a brief period when Pioneer’s customer-satisfaction rankings were not above average. In December 2009, one metric showed that Pioneer’s Land Rover dealerships were slightly below the national average. By another metric, these dealerships were at the national average.
The fact-finder could reasonably view these rankings as an aberration caused largely by damage from a fire in October 2009. In addition, by the time that Land Rover would have made its decision, customer-satisfaction rankings had recovered. As a result, this factor weighs against summary judgment to Alerus.
10. The Proposed Dealer’s Honesty and Good Faith Dealings with the Manufacturer
For the sake of argument, I assume that there is a tenth factor that manufacturers *1355 may consider: the proposed dealer’s honesty and good faith dealings with the manufacturer. See Fladeboe v. Am. Isuzu Motors Inc., 150 Cal.App.4th 42, 58 Cal. Rptr.3d 225, 241 (2007); Part 11(1), above. This factor could not justify summary judgment to Alerus.
Alerus provides two reasons for Land Rover to view Pioneer as dishonest. First, Alerus contends that in the years preceding the negotiations, Mr. Brewer had sold about one-third of his Pioneer shares to the plan without Land Rover’s approval. The parties agree that the sales occurred, but they dispute whether the sales required Land Rover’s approval. Second, Al-erus alleges that Mr. Brewer falsely represented ownership of 100% of Pioneer’s shares even after some of the Pioneer shares had been sold to the plan. For the sake of argument, I assume that the sales required Land Rover’s approval and that Mr. Brewer falsely represented his ownership of Pioneer’s shares. Even with these assumptions, a genuine question of material fact would exist on the reasonableness of Land Rover’s potential decision to nix the transfer.
Alerus’s first argument fails because a reasonable fact-finder could-conclude that Mr. Brewer had made an honest mistake in failing to seek Land Rover’s advance approval. Alerus’s argument that the sales required approval is based on Land Rover’s dealership agreements. Only one of these agreements exists in the summary-judgment record: an agreement between a Pioneer subsidiary and Land Rover.
In part, the agreement restricted sales of shares of 15% or greater equity in the “Dealer.” The agreement identified the “Dealer” as “Land Rover Miramar, Inc. d/b/a Land Rover Miramar.” Appellants’ App’x, vol. V, at 808. In addition, the agreement arguably restricted sales of Pioneer’s equity by catch-all language preventing Mr. Brewer from making any change “in the foregoing in any respect without [Land Rover’s] prior written approval.” Id. at 813. This provision restricted transfers of entities listed to that point,, but Pioneer’s ownership was set out on the next page.
For the sake of argument, I assume that one or both of the provisions required advance approval of the changes in Pioneer’s ownership. But the need for approval is not clear. Thus, a reasonable fact-finder could conclude that Mr. Brewer had made an honest mistake in failing to seek Land Rover’s advance approval. Because there was little summary-judgment evidence to suggest that Mr. Brewer had intentionally breached the agreement, a reasonable fact-finder could justifiably conclude that it would be objectively unreasonable for Land Rover to withhold approval based on a belief that Mr. Brewer had flouted the agreement.
Alerus’s second argument is that Mr. Brewer falsely represented that he owned 100% of Pioneer’s shares. This representation appears in a single exhibit attached to one of the dealership agreements. By the time that this agreement was signed, Mr. Brewer had sold 14.5% of Pioneer’s shares to the plan. But the fact-finder could reasonably conclude that the erroneous statement of ownership would not have benefited Mr. Brewer or harmed Land Rover.
But let’s suppose that the fact-finder regards Mr. Brewer as dishonest based on his failure to obtain advance approval for past sales or his statement that he owned 100% of Pioneer’s shares rather than 85.5%. If the transfer were approved, the sale would have stripped Mr. Brewer of any ownership interest in Pioneer. If Land Rover thought that Mr. Brewer had acted deceptively, Land Rover presumably would have relished the transfer’s diminu *1356 tion in Mr. Brewer’s control over the dealerships.[6]
At oral argument, Aleras contended that a fact-finder could reasonably suspect complicity of the other trustees and the plan in Mr. Brewer’s alleged misdeeds. Oral Arg. at 26:54-28:10. But, the converse is also true: the fact-finder could reasonably conclude that the other trustees and the plan
• did not know that the transfers required authorization by Land Rover and
• did not know that Mr. Brewer had incorrectly stated his ownership percentage in Pioneer.
If the fact-finder drew these conclusions, the fact-finder could reason that Land Rover should have relished the opportunity to deal with two of the innocent trustees and the plan rather than an individual who had acted deceptively.[7] See Pacesetter Motors, Inc. v. Nissan Motor Corp. in U.S.A., 913 F.Supp. 174, 180 (W.D.N.Y. 1996); see also Part 11(5) (discussing Pacesetter Motors).
But let’s suppose that the fact-finder regards the other trustees and the plan as complicit in Mr. Brewer’s alleged dishonesty. Even then, the fact-finder could reasonably conclude that any dishonesty by the trustees and the plan would not justify rejection of the transfer. Federal and state courts have long recognized gradations of dishonesty. For instance, federal and state courts have done so in cases involving
• securities law,[8]
• agency law,[9]
• punitive damages,[10]
• the administration of estates,[11]
• the Federal Rules of Evidence,[12]
• misconduct by attorneys,[13] and
*1357 • misconduct by law enforcement officers.[14]
Applying similar gradations here, the fact-finder could reasonably conclude that even if the other trustees and the plan had been eomplicit in Mr. Brewer’s missteps, Land Rover should have regarded this complicity as an inadequate reason to withhold approval of the plan.
Alerus argues that Land Rover could reasonably withhold approval if the plan was materially deficient under just one factor. That is theoretically true. For example, if Pioneer’s senior managers had cheated Land Rover, embezzled, or committed serious crimes, no one could legitimately fault Land Rover for withholding approval regardless of other positive factors.
This is the point of a California opinion invoked by Alerus: Fladeboe v. American Isuzu Motors, Inc., 150 Cal.App.4th 42, 58 Cal.Rptr.3d 225 (2007). There a car manufacturer refused to approve the transfer of a dealership, and the trial court impliedly found as a factual matter that this decision was objectively reasonable. Fladeboe, 58 Cal.Rptr.3d at 229-30, 240. But that case differed from ours in the applicable standard of review and in the degree of culpability on the part of the existing dealer.
First, the standard of review was different. Here we are considering an award of summary judgment to Alerus. Thus, we view all of the evidence and reasonable inferences in the light most favorable to the trustees and the plan. See Part I, above. By contrast, the trial court in Fla-deboe conducted a bench trial and impliedly found that the car manufacturer (Isuzu) had reasonably withheld approval of the transfer. Id. at 237-40. Thus, the California Court of Appeal applied the substantial-evidence standard. Id. at 238-39. Under this standard, the appellate court “consider[s] the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings.” Thompson v. Asimos, 6 Cal. App.5th 970, 212 Cal.Rptr.3d 158, 169 (2016). In Fladeboe, the defendant manufacturer was the prevailing party and beneficiary of this generous standard.
Second, the facts were far more egregious in Fladeboe. There a jury found that Mr. Ray Fladeboe and a corporation that he owned had committed fraud, and the California Court of Appeal upheld that finding. Fladeboe, 58 Cal.Rptr.3d at 233, 242-44. This fraud stemmed from Mr. Fladeboe’s scheme to avoid taxes. Id. at 230. As part of that scheme, Mr. Fladeboe had his corporation transfer the dealership’s assets to a new corporation, which he also owned. Id. at 230-32. He then dissolved the old corporation and allowed the new corpo *1358 ration to service Isuzu vehicles without the appropriate license, assigned the original corporation’s Isuzu code number to the new corporation, allowed the new corporation to collect over $214,000 in sales incentives from Isuzu, and collected over $171,000 in warranty reimbursements from Isuzu—all without the knowledge of Isuzu. Id. at 232-33, 236. Isuzu learned of the dissolution eight months after the fact and discovered that the new corporation had serviced Isuzu vehicles without a license and had secretly used the old dealer’s code number to collect sales incentives and warranty reimbursements that Isuzu had intended for its old dealer. Id. Ultimately, Isuzu refused to accept the new corporation as a dealer. Id. at 232.
If the trustees and the plan had concocted a scheme like the one in Fladeboe, few would question Land Rover’s right to withhold approval. And even with our far more benign facts, a fact-finder could justifiably conclude that Land Rover might have reasonably withheld approval. But a reasonable fact-finder could also have regarded it as objectively unreasonable for Land Rover to nix the transfer. Unlike the dealer in Fladeboe, the trustees and the plan had not
• concocted a tax-avoidance scheme,
• secretly dissolved,
• secretly assigned a dealer code number, or
• secretly allowed a new dealer to operate without a license, collect funds from the manufacturer, and service vehicles.
Fladeboe suggests only an obvious truism: A fact-finder can justifiably find that a vehicle manufacturer may reasonably withhold approval when victimized by a proposed dealer’s fraudulent scheme to cheat the manufacturer out of hundreds of thousands of dollars. That truism does not affect our inquiry.
11. The Proposed Dealer’s Overall Financial Strength
A Land Rover executive testified that Land Rover considers the proposed dealer’s overall financial strength in deciding whether to approve a transfer. For the sake of argument, I assume that Land Rover could consider this factor. See Part 11(3), above.
The summary-judgment evidence indicates that Pioneer was financially strong and would remain so after becoming employee-owned. As noted above, Pioneer’s working capital exceeded Land Rover’s guidelines by over 200 percent. See Part VI(1), above. Around that time, Pioneer’s total capital was about $16.2 million. In addition, Pioneer owned unencumbered vehicles worth about $11 million. If necessary, Pioneer could use these vehicles to rapidly obtain cash or financing.
Pioneer also owned its real estate, which could serve as an additional source of financing. In November 2009, this real estate was worth about $9.5 million.
With this evidence, a fact-finder could reasonably conclude that Pioneer was financially strong. No evidence suggested that this situation would change once Pioneer became employee-owned. Therefore, this factor weighs against an award of summary judgment to Alerus.
12. The Transfer’s Likely Effect on Financial Performance
A Land Rover executive testified that in determining whether to approve a transfer, Land Rover considers the likely effect on financial performance. For the sake of argument, I assume that Land Rover may consider this factor. See Part 11(3), above.
As noted above, senior management planned to remain with Pioneer after the sale. See Part VI(2), above. This continuity *1359 suggests that financial performance would not be adversely affected by the sale.
Indeed, the summary-judgment evidence indicates that the sale could enhance Pioneer’s financial performance. As discussed above, the record contains evidence that ownership by an employee stock ownership plan is advantageous. See Part 11(4), above. Thus, drawing all reasonable inferences in favor of the trustees and the plan, a reasonable fact-finder could infer that the sale would probably boost Pioneer’s financial performance. This factor weighs against an award of summary judgment to Alerus.
13. Management’s Commitment to the Dealership
In determining whether to approve a transfer, Land Rover also considers the level of commitment shown by the proposed dealer’s management. For the sake of argument, I assume that Land Rover may consider this factor. See Part 11(3), above.
The summary-judgment evidence indicates that
• Pioneer’s senior managers planned to enter into long-term employment contracts, at least some of which had non-compete provisions, and
• employees generally become more committed when they become owners.
Therefore, a reasonable fact-finder could conclude that (1) senior management was committed to Pioneer and (2) after Pioneer became employee-owned, senior management would remain committed or even intensify their commitment. As a result, the factor weighs against an award of summary judgment.
* * *
In sum, none of the thirteen objective factors precludes a genuine issue of material fact on the reasonableness of a decision by Land Rover to withhold approval. This case is not one where dispositive facts are undisputed or indisputable. As a result, the district court should have concluded that a genuine issue of material fact existed. In these circumstances, I would reverse. Because the majority reaches a different conclusion, I respectfully dissent.
VII. Conclusion
For the sake of argument, I assume that Land Rover did not want to approve the transfer. Notwithstanding that assumption, a reasonable fact-finder could conclude that Land Rover would ultimately approve the transfer because doing otherwise would have been objectively unreasonable.
The record indicates that Land Rover follows the objective-reasonableness requirements of California and Colorado, which would preclude Land Rover from unreasonably withholding approval. Our court must presume that Land Rover would have followed these requirements.
The objective reasonableness of Land Rover’s hypothetical refusal entails a disputed question of material fact. In extreme circumstances where dispositive facts are undisputed or indisputable, objective reasonableness may be decided on summary judgment. But those circumstances are not present here.
Viewing the evidence and reasonable inferences in the light most favorable to the trustees and the plan, I conclude that a reasonable fact-finder could find that (1) withholding approval would be objectively unreasonable, (2) Land Rover probably would not have exercised the alleged right of first refusal, and (3) Land Rover would probably have approved the transfer.
Alternatively, the fact-finder could reasonably conclude that Pioneer, the trustees, and the plan would have used an injunction to force Land Rover to approve *1360 the transfer. Viewing the evidence and reasonable inferences favorably to the trustees and the plan, as we must at this stage, we should conclude that the state courts would have entered an injunction to require Land Rover’s approval of the transfer.
Because the trustees and the plan have defeated the sole basis for the district court’s ruling, I would reverse and remand for further proceedings. Because the majority affirms, I respectfully dissent.

. The trustees and the plan also argue that
• the loss of an opportunity to pursue Land Rover’s approval would trigger liability even if Land Rover would not have approved the transfer,
• the district court should have shifted the burden of proof on causation, and
• the district court erred in excluding certain expert testimony.
For the sake of argument, I assume the invalidity of these arguments. Even with that assumption, I would reverse the award of summary judgment.

. Negotiations between Mr. Brewer and Ale-rus broke down in 2010. If the negotiations had' not broken down, Land Rover would have made its decision based on state laws existing in 2010. Thus, I apply the state laws as they existed in 2010.

. Land Rover did not have Dr. Mangiero's report. But the report provides evidence of the objective advantages of ownership in an employee stock ownership plan. Land Rover may have viewed such ownership with skepticism. But the fact-finder could have regarded such skepticism as objectively unreasonable in light of Dr. Mangiero's report.

. See Part I, above.

. The majority adds that in district court "neither party ... moved to admit evidence on whether a lawsuit between Pioneer and Land Rover was probable or likely to succeed.” Maj. Op. at 1341. But the summary-judgment record indicates that Pioneer, the trustees, and the plan would have sued if Land Rover had withheld approval of the transfer. See Appellants’ App’x, vol. XI at 2227 ("Obviously, if [Land Rover's] approval of the proposed transaction is not received, Pioneer and Mr. Brewer will have no choice but to seek appropriate administrative or judicial relief....”). In addition, the summary-judgment record contains extensive evidence bearing on whether the lawsuit would have succeeded. See Part VI, below (examining this evidence and viewing it in the light most favorable to the trustees and the plan).

. As controlling shareholder of Pioneer, Mr. Brewer exercised complete control over the dealerships. By contrast, Mr. Brewer was one of three trustees for the plan. Thus, if the sale and transfer had taken place, Mr. Brewer would have gone from total control to a minority vote as one of three trustees.

. The majority points to evidence indicating that Land Rover believed "that the Plan was complicit in [Mr. Brewer's] deception." Maj. Op. at 1340 n.ll. Let’s assume that the majority is right. Even if Land Rover faulted the plan, the fact-finder could have regarded that belief as objectively unreasonable for the reasons discussed in the text.

. See, e.g., McKeel v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 419 F.2d 1291, 1292 (10th Cir. 1969) (upholding the district court's finding that "in the main [the plaintiff's] testimony is found to be completely false” (internal quotation marks omitted) (emphasis added)).

. See, e.g., Westinghouse Credit Corp. v. Green, 384 F.2d 298, 300 (10th Cir. 1967) ("[The defendant] had never investigated either the property or the process, and the representations that it had done so were completely false.” (emphasis added)).

. See, e.g., Thomas v. Metro. Life Ins. Co., 40 F.3d 505, 510 (1st Cir. 1994) (holding that the plaintiff "simply has not shown that [the defendant's] conduct in the instant case rises to the level of morally reprehensible conduct or extraordinary dishonesty” necessary for punitive damages under New York law (emphasis added)).

. See, e.g., Fourniquet v. Perkins, 48 U.S. (7 How.) 160, 171, 12 L.Ed. 650 (1849) (stating that a petition "alleged, not merely acts of maladministration, but instances of dishonesty and spoliation extraordinary in character and extent” (emphasis added)).

. See, e.g., United States v. Morgan, 505 F.3d 332, 340 (5th Cir. 2007) (holding that the defendant's "violations of the conditions of her pretrial release rise to a level of dishonest conduct sufficient to allow the government's inquiry” on cross-examination about specific instances of misconduct (emphasis added)).

. See, e.g., Read v. State Bar, 53 Cal.3d 394, 279 Cal.Rptr. 818, 807 P.2d 1047, 1062 (1991) ("[P]etitioner’s high degree of dishonesty warrants disbarment.” (emphasis added)).

. See, e.g., Doe v. Dep't of Justice, 565 F.3d 1375, 1380 (Fed. Cir. 2009) (criticizing a disciplinary board for failing "to articulate a meaningful standard as to when private dishonesty [by an FBI agent] rises to the level of misconduct that adversely affects the 'efficiency of the service' " (emphasis added) (quoting 5 U.S.C. § 7513(a) (2006))); State v. Pub. Safety Emps. Ass’n, 323 P.3d 670, 690 (Alaska 2014) (noting that "there are gradations of dishonesty that public policy will tolerate in its police officers” (emphasis added)); Town of Stratford v. AFSCME, Local 407, 315 Conn. 49, 105 A.3d 148, 154 (2014) ("[W]e must consider whether [a police officer's] dishonesty was 'so egregious that it requires nothing less than the termination of [his] employment so as not to violate public policy.,..’ ” (emphasis added) (third alteration in original) (quoting State v. AFSCME, Local 391, 309 Conn. 519, 69 A.3d 927, 938 (2013))); Kitsap Cty. Deputy Sheriff’s Guild v. Kitsap County, 167 Wash.2d 428, 219 P.3d 675, 680 (2009) ("[E]ven if Brady [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] case law constituted a public policy against reinstatement of [a police] officer found to be dishonest, it provides no guidance regarding what level of dishonesty would prohibit reinstatement.” (emphasis added)).